The Valley Pulp & Paper Co. vs. West.

58  599
77  362

## THE VALLEY PULP & PAPER COMPANY vs. WEST.

*October 29 — November 20, 1883.*

HIGHWAYS: DEDICATION. *(1) Parol evidence. (2) Limits of dedication. (3) Dedication does not vest title to fee in adjoining owners.*
DEED: EASEMENTS. *(4) Grant of easements by necessary implication. (5) Deed of water power construed: Uncertainty in grant.*

1. Dedication of land for a highway may be proved by parol.
2. The dedication of a highway by user is confined to the lands actually used.

3. Where lands conveyed by metes and bounds are separated from a highway by a narrow strip belonging to the grantor, the *subsequent* dedication of such strip as a part of the highway by the grantor, will not enlarge the grant or confer upon the grantee any title to the fee of the highway so enlarged.

4. When the owner of land and an appurtenant water power grants a portion thereof he gives to the grantee, by necessary implication, such easements upon the remainder as are necessary to the use and enjoyment of the part granted, and for the purposes expressed in the deed.

5. A conveyance of land embraced fifteen feet of the end of a bulkhead, "together with the privilege of drawing from said bulkhead as much water as [the grantee] may need for whatever machinery may be erected on said premises." The opening in that part of the bulkhead conveyed, through which water could be drawn, was, at the time, about nine feet. No machinery had then been erected. *Held:*

(1) The grantor divested himself of all title to that part of the bulkhead conveyed, and the grantee may enlarge the opening therein to any extent, provided he does not appropriate or injure any other portion of the bulkhead, or draw more water than authorized by the deed.

(2) The grantee is not limited to the quantity of water which could be drawn through the opening as it existed at the time of the conveyance, but is entitled to any amount of water which can be drawn through any properly constructed passage-way, within the limits of the fifteen feet conveyed, provided he does not draw more than is actually needed for the machinery erected on the premises.

(3) There was no such uncertainty in the amount of water granted as would defeat the grant.

(4) The grantor may be restrained from drawing water from the bulkhead at such times or in such quantities as to lessen or impair the amount to which the grantee is entitled.

APPEAL from the Circuit Court for *Outagamie* County. The following statement of the case is substantially that made by Mr. Justice CASSODAY, prefatory to the opinion:

In January, 1851, one Levi Blossom, being then the owner of all the lands in question, granted to a road company the right of way through and over any lands owned by him in section 35, township 21 north, range 17 east (now in the

city of Appleton), "for the purpose of building a plank or turnpike road . . . . *not exceeding four rods* wide, and for no other purpose. To have and to hold the same to said company . . . . so long as the same shall be used by them for the purpose aforesaid, and no longer." The lands described included Grand Chute island, in the Fox river, and a plank road was actually constructed, running north and south across that island. In January, 1855, the defendant, *West*, became the owner of all the land in said section 35, lying east of the west line of the plank road as it then existed, subject to the right of way granted for such road, and also became the owner of Grand Chute island, and the water power appurtenant thereto. In 1857, the plank road was discontinued and abandoned as such, but the space occupied by the plank track, or a large portion thereof, including most of the ground on either side, being in all a strip of nearly four rods in width, continued to be used by the public, and became known as Lake street. That street crosses the south channel of the Fox river over a bridge, a short distance above and west of a dam or bulkhead constructed across said channel, and runs thence southward across Grand Chute island.

In 1855, soon after becoming the owner of the island, *West* built a fence commencing from the bulkhead at or near the southeast corner of the bridge over the south channel, and running thence southward along the east side of the plank road. This fence remained where it was built until 1869, when it was removed.

On the 27th of August, 1864, *West* conveyed to one Woodward, by warranty deed, that part of Grand Chute island in the city of Appleton, being a part of said section 35, "bounded by a line drawn as follows: For a starting point, begin at the southwest corner of the bulkhead across the south channel of the Fox river, at the head of Grand Chute island; thence run south, ten degrees east, 121 feet, to

the southwest corner of the premises hereby to be conveyed; *from that, as a starting point,* run north, eighty degrees east, 150 feet; thence north, ten degrees west, 128 feet; thence south, eighty-two and one half degrees west, 150 feet; thence south, ten degrees east, 136 feet to the said starting point,— said premises embracing fifteen feet of the south end of the bulkhead, together with the privilege of drawing from said bulkhead as much water as said Woodward, his heirs or assigns, may need for whatever machinery may be erected on said premises. Said *West,* his heirs and assigns, covenant and agree to maintain said water power: provided, the said Archibald Woodward, his heirs and assigns, can claim no damages for failure of the supply of water, in case said *West,* his heirs or assigns, use ordinary diligence to maintain said bulkhead and dam, and for drawing off the water for the purpose of increasing the capacity of the water power by enlarging the bulkhead and extending the wing dam further up the river: provided, further, that said *West,* for himself, his heirs and assigns, reserves a perpetual right of way for a street sixteen feet wide across said premises, to run on the south side of said lot: provided, also, that said Woodward, his heirs and assigns, shall have no right to obstruct in any way the flow of water which now or hereafter may be discharged from water power above." The land so described and conveyed lay to the east of Lake street, the west line thereof being parallel to and about nine feet distant from the fence above mentioned. *West* continued to own the lands south of the tract conveyed to Woodward and adjoining the right of way reserved in that conveyance.

At the time of that conveyance the bulkhead was 132 feet long and sixteen feet wide, and was spaced off by bents, of which there were five in that part of the bulkhead conveyed. The entire distance from outside to outside timbers in that part of the bulkhead conveyed was fifteen feet, and the opening between was twelve feet. In the space of fifteen

feet were five bents, one of which was on each extreme out-side, and the other three on the inside. Each of the five bents was twelve inches in size, and there were also five three-inch gate-slides, thus leaving in all a space of about nine feet through which to draw water.

By sundry mesne conveyances, between July, 1870, and 1874, all the right, title, interest, and estate so conveyed to Woodward, together with all the rights and privileges of drawing and using water from said bulkhead and water power therein conveyed or granted, and all rights and privileges appurtenant thereto, became fully vested in the plaintiff, subject, however, to the conditions, reservations, and provisos therein contained.

The bulkhead which existed in 1864 having been carried away by a wash-out, the defendant in 1874 rebuilt the same with stone piers with openings, the opening in that part of the bulkhead which belonged to the plaintiff being about nine feet wide. Subsequently the plaintiff built its mill upon the land conveyed by .West to Woodward, and at the same time, though forbidden so to do by the defendant, enlarged the bulkhead on such land so as to obtain a clear opening of about fourteen feet.

At the time of rebuilding the bulkhead in 1874, the defendant, for the purpose of drawing water from the stream to his lands lying south of the lot conveyed to Woodward, made an opening on the south side of the south channel, between the bulkhead and the Lake street bridge, and at the north end of the strip of land here in dispute and hereinafter described. This opening was nine feet wide and extended fourteen feet north and south. Its side walls were of solid stone, and it was separated from the water in the bulkhead by light double planking.

Between 1870 and 1874 a new bridge was built over the south channel about nine or ten feet further to the east than the old bridge, and, accordingly, the traveled portion of Lake

street was likewise carried about the same distance to the east. The premises comprising Lake street were never platted by the defendant, nor conveyed to the city. Not long after the removal of the fence above mentioned along the east side of Lake street, and more than ten years before the commencement of this action, a sidewalk was built about where the fence had stood, viz., about, nine feet west of the west line of the plaintiff's land as described in the deed to Woodward. This strip between the sidewalk and the plaintiff's west line was never at any time occupied or used by the public for travel, and no work was done upon it to fit it for travel. Beneath the surface of this strip the defendant was in the act of digging a trench and laying a pipe or conduit, some two feet in diameter, from the opening above described southward to the mills or machinery on his land south of the plaintiff's, and had obtained a permit so to do from the city.

The action was brought to restrain the defendant from digging the trench and laying the conduit or drawing any water through the same, on the ground that the premises along which the conduit was to be laid were a part of Lake street and that the fee thereof was in the plaintiff, and on the further ground that such action of the defendant would reduce the head of water at the bulkhead and prevent the plaintiff from drawing so much water from the basin as it needed to run its mill. The answer alleges that the fee of the premises upon which the opening was made and through which the water is to be conveyed is in the defendant, and denies that such premises are a part of Lake street. It further denies that the proposed conveyance of water will in any way diminish the amount of water which the plaintiff is entitled to use.

The testimony is voluminous. The court found, among other things, that before the commencement of the action Lake street had become a public street of the city of Apple-

ton, down to the westerly line of the plaintiff's land, by dedication made by the defendant and accepted by the city; that by virtue of such dedication the title in fee from the west line of the plaintiff's land, as described in the deed, to the center of the street, including the strip where the defendant proposed to excavate and lay the conduit pipe, became vested in the plaintiff, subject to the public easement, and that without the consent of the plaintiff the defendant had no right to so excavate or lay said conduit pipe; that the plaintiff had the right to draw through its fifteen feet of bulkhead sufficient water to run all the machinery the plaintiff might erect on its said premises, and that it needed more than it could draw through said fifteen feet; that if water was let through such conduit pipe to other premises it would materially diminish the amount of water which the plaintiff could draw through its fifteen feet of bulkhead. As a conclusion of law the court found that the plaintiff was entitled to judgment for the relief demanded in the complaint. From a judgment in accordance with such findings the defendant appealed.

For the appellant there was a brief by *Sloan & Bottensek*, attorneys, and *Winfield Smith*, of counsel, and oral argument by *Mr. Smith* and *Mr. Sloan.* They argued, among other things, that intent is an essential feature of dedication and should clearly and satisfactorily appear. Dillon on Mun. Corp. (2d ed.), sec. 499; Angell on Highways, sec. 142; *Buchanan v. Curtis,* 25 Wis., 99; *Bushnell v. Scott,* 21 id., 451. Upon the discontinuance of the plank road the appellant might have utterly excluded travel from the premises or have limited it to such portion thereof as he might desire. By the erection of the fence and maintenance thereof for fourteen years he manifested his intention to limit the public user to that part of the premises west of the fence; and his subsequent acts, including the construction of the opening on the strip in dispute, equally manifested his intent. The shifting

of the line of travel to the east, upon the construction of the new bridge, did not change the boundaries of the street. A highway by user is of no established width by law; but the width as used is the established and legal width. *Hart v. Bloomfield,* 15 Ind., 226; *Darlington v. Commonwealth,* 41 Pa. St., 63. Even if the strip in dispute was dedicated to the public, the defendant did not acquire the fee thereof. Dedication simply creates an easement, and the fee of land cannot be vested in any one by that act. *Milwaukee v. M. & B. R. R. Co.,* 7 Wis., 99; *Gardner v. Tisdale,* 2 id., 153; *Pearsall v. Post,* 20 Wend., 122. A deed is to be construed with reference to the actual state of the property at the time of its execution. 3 Washb. on R. P. (3d ed.), 333. At the time of the conveyance to Woodward in 1864 there was an opening of about nine feet in the bulkhead through which water could be drawn; and the quantity of water which could be passed through that opening was the quantity conveyed. See Angell on Watercourses (6th ed.), sec. 148; *Dewey v. Bellows,* 9 N. H., 282; *Schuylkill Nav. Co. v. Moore,* 2 Whart., 477; *Covel v. Hart,* 56 Me., 520; *Hull v. Fuller,* 4 Vt., 199; *Stanley v. Green,* 12 Cal., 162; *Comm. v. Roxbury,* 9 Gray, 493; *Loverin v. Walker,* 44 N. H., 489; *Green v. Putnam,* 8 Cush., 25; *Dennis v. Wilson,* 107 Mass., 593; *Peck v. Conway,* 119 id., 546.

*Moses Hooper,* for the respondent, argued, *inter alia,* that the words granting the water, in the deed to Woodward, were certain and definite. Similar words have been held so certain a measure of the rights granted as to exclude any restriction or modification even by other clauses in the instrument indicating a smaller measure of right. *Amidon v. Harris,* 113 Mass., 59; *Hapgood v. Brown,* 102 id., 451; *Blake v. Madigan,* 65 Me., 522; *Perry v. Binney,* 103 Mass., 156; *Avon Manuf'g Co. v. Andrews,* 30 Conn., 476; *Johnson v. Rand,* 6 N. H., 22; *Dewey v. Williams,* 40 id., 222; *Stevenson v. Wiggin,* 56 id., 308; *Comstock v. Johnson,* 46

N. Y., 615; *Deshon v. Porter,* 38 Me., 289; *Ashley v. Pease,* 18 Pick., 268; *Hurd v. Curtis,* 7 Met., 94; *Cromwell v. Selden,* 3 N. Y., 253; *Pratt v. Lamson,* 2 Allen, 275; *Biglow v. Battle,* 15 Mass., 313; *De Witt v. Harvey,* 4 Gray, 486; *Strong v. Benedict,* 5 Conn., 210; *Rogers v. Bancroft,* 20 Vt., 250. The grant of water power was not even limited by the conveyance of fifteen feet of the bulkhead. There was no provision that the water should be drawn through that fifteen feet; and if necessary plaintiff could draw water from other parts of the bulkhead adjacent to the lot, to supply the mill. For a grant of property carries with it by construction, or necessary implication, such easement in other property of the grantor as is necessary to the enjoyment of the estate granted. *Smith v. Ford,* 48 Wis., 115; *Dillman v. Hoffman,* 38 id., 559; *Jarstadt v. Smith,* 51 id., 96; Washb. on Easem., 42; Angell on Watercourses, sec. 158; *Thompson v. Banks,* 43 N. H., 540; *Perrin v. Garfield,* 37 Vt., 312; *Leonard v. White,* 7 Mass., 6; *Tabor v. Bradley,* 18 N. Y., 109; *Coleman's Appeal,* 62 Pa. St., 275; *Brigham v. Smith,* 4 Gray, 297; *Collins v. Prentice,* 15 Conn., 39; *Collins v. Driscoll,* 34 id., 43; *Pierce v. Selleck,* 18 id., 321; *Leonard v. Leonard,* 2 Allen, 543.

CASSODAY, J. We are inclined to think that the court was right in finding that Lake street was a public street, and that it became such by dedication for that purpose by the defendant and the acceptance thereof by the city. There can be no question but what such dedication can be proved by parol. *Connehan v. Ford,* 9 Wis., 240. But it does not necessarily follow that the plaintiff owns the fee to the center of the street. The dedication of a highway by user is necessarily confined to the lands actually used. *Cahill v. Layton,* 57 Wis., 611, 612, and cases there cited. Here the fence mentioned was built by the defendant in 1855, and by him maintained until 1869. The plank road was entirely

west of it. That was abandoned about 1857, and the public thereupon used the land, which up to that time had been occupied by the plank road, for a public street. That street, like the plank road, was entirely west of the fence, and continued to be up to the time of its removal. Thus the street continued along west of the fence for twelve years before such removal. The fence was still there when the defendant conveyed to Woodward in 1864, and continued to remain there for about five years thereafter. Between that fence and Woodward's west line, as fixed in his deed, there was a strip of land about nine feet wide running from the bulkhead on the north to the defendant's lands immediately south of the land conveyed to Woodward. There can be no question but what the title to that strip of land between the fence and Woodward's west line, as fixed in his deed, was, during the continuance of the fence, in the defendant; for during that time no part of it had ever been used by the public for travel or otherwise. The absence of all such use precluded the possibility of any right being acquired by virtue of such use. The defendant having the title to that strip of land until 1869, it follows that during that time he also owned the fee of Lake street, or at least the east half of it.

Such being the facts, we cannot hold that the defendant lost the title to any of that land merely by the removal of the fence. Nor do we think he lost such title by the mere fact that after the new bridge was built, a few years later, the traveled track was changed, and became a few feet nearer Woodward's west line as fixed in his deed, in order to correspond with the location of the south end of the new bridge. Nor do we think the defendant lost such title by the fact that a sidewalk was subsequently built about where the fence had been located. Especially is this so, since the defendant owned other lands south of and adjoining the plaintiff's land, and had reserved a street or private way, along the south line of the plaintiff's land, and is still the owner of

whatever surplus water power there may be appurtenant to Grand Chute island, and appurtenant to the south channel where it passes Grand Chute island, including the point where it passes lot 1 (being the same premises described in the Woodward deed), on which the plaintiff's mill stands, except what rights others may have acquired under him. These facts are all admitted or proved beyond controversy, and they clearly distinguish the case from that class of cases in which this court has held that the owner of a lot or piece of land described by metes and bounds, adjoining a public street or highway, owns the fee to the center of such street or highway, subject to the public easement. In most of those cases the street or highway existed prior to the conveyance, and hence the deed was necessarily construed with reference to its existence. *Messer v. Oestreich,* 52 Wis., 684; *Whitney v. Robinson,* 53 Wis., 309.

Here there is no claim of any public user, prior to 1869, of the strip of land of about nine feet wide, which up to that time was wholly outside of the street, and between the fence and Woodward's west line as fixed in his deed. Assuming that by subsequent user there was a dedication also of that strip to the public use as a part of the street, yet such subsequent dedication to the public use merely, and under the facts and circumstances here presented, would not enlarge the grant made to Woodward several years before. Such subsequent dedication would not in any way aid in the construction of the language contained in the former deed.

In *Pettibone v. Hamilton,* 40 Wis., 402, the dedication of Darling place and the alley was subsequent to the acquisition of title by the abutting lot-owners, but in that case the dedication was specifically for the benefit of such abutting lot-owners. Certainly the case is distinguishable from the facts here presented. We must conclude that Woodward got no title to the strip of land between his west line, as fixed in his deed, and the fence then standing about nine

feet west of it; much less did he get any title to the fee of any portion of Lake street. Nor do we think the plaintiff got any such title by reason of anything that occurred after the removal of the fence.

It does not follow, however, that either Woodward or the plaintiff was or could have been rightfully barred by the defendant, or any one claiming under him, from free access to and from the land so purchased and Lake street, and also the bulkhead and water power. Such right of free access existed by virtue of the defendant's grant to Woodward as a matter of necessity. *Jarstadt v. Smith*, 51 Wis., 96. The land was purchased, as appears from the deed, for the very purpose of building and operating a mill or machinery upon it. To do that it became essential to pass to and from the land as necessity might require. That could only be done by passing over lands of the defendant. Hence, by virtue of the grant, the defendant, by necessary implication, gave to the grantee, his heirs and assigns, such easements as were necessary for the use and enjoyment of the land and water granted, and for the purposes named in the deed.

It follows that, the defendant having acquired from the city the privilege of laying the conduit pipe mentioned along under ground on the strip of land in question, the plaintiff had no cause of complaint except in so far as is hereinafter indicated. At the time of making that deed there was no mill upon the premises thereby conveyed. Upon the faith of such grant and assurance, the plaintiff has built on its land a mill and machinery at a cost of about $40,000. The rights of the plaintiff to restrain the defendant from laying the conduit pipe, and drawing water through the same from the bulkhead, must be measured and limited by the language of the deed from the defendant to Woodward, and which is literally quoted in the above statement of facts. That conveyance expressly embraced fifteen feet of the south end of the bulkhead, together with the privilege of drawing from

said bulkhead as much water as said Woodward, his heirs or assigns, *might need for whatever machinery might be erected on said premises;* and the defendant, in and by the deed, for himself, his heirs and assigns, expressly covenanted and agreed *to maintain the water power,* with the provisos therein mentioned.   In construing this portion of the deed it is urged, that reference must be had to the actual state of the property at the time of its execution.   Such, of course, is the general rule in the conveyance of specific property where the description in the deed is otherwise uncertain.   *Messer v. Oestreich, supra; Whitney v. Robinson, supra.*

Here there is no uncertainty as to the land described.   The survey of that is stated definitely, and there is no doubt about the location of any line.   The deed did not leave the title of the entire bulkhead in the defendant, nor merely authorize Woodward, his heirs and assigns, to draw water from it through the then existing opening of about nine feet in the bulkhead, but actually covered and included a portion of the bulkhead, and expressly declared that the premises thereby conveyed embraced fifteen feet of the south end of the bulkhead.   The defendant, having thus forever divested himself of any and all title to that section of the bulkhead, and absolutely and forever vested the same in Woodward, his heirs and assigns, has thereby forever precluded himself from all interference or dictation as to the kind of gates to be used, or the manner of their construction: provided, always, that the party claiming under that deed shall not appropriate other portions of the bulkhead not included within the fifteen feet so conveyed, nor injure or impair any other portion of the bulkhead or water power, nor draw therefrom over or through the fifteen feet so conveyed any more or greater amount of water than was expressly authorized by the deed.

But there is still another difficulty in limiting the amount of water to be drawn from the bulkhead to the quantity

which could have been drawn through the nine-foot opening as it then existed. The deed nowhere makes, or attempts to make, such opening the measure or limit of the quantity of water to be so drawn, but, on the contrary, expressly stipulates for another and different measurement and limitation. The parties to that conveyance, having thus chosen and adopted, by express stipulation, a standard and measurement of the amount of water to be drawn from the bulkhead, the court is not at liberty to set it aside and in effect make a new deed by formulating, adopting, and injecting into the one made by the parties a different limitation and measurement. It is to be remembered that at the time of making that deed the machinery referred to in the deed was not in existence — certainly had not been erected on the premises. The deed gave the right to draw as much water as Woodward, his heirs or assigns, *might need* for *whatever* machinery *might be erected* on the premises conveyed. The amount to be drawn was thus to be measured by the necessities of the machinery thereafter to be erected. It might be much less or more than could have been drawn through the nine-foot opening which then existed; but, whether more or less, none could be rightfully drawn which should not be actually needed by the machinery so erected. In other words, the deed gave no authority to draw water for mere waste, nor to be used in running any machinery on other premises, nor even upon the premises conveyed, except as might be needed to operate machinery thereon erected. Since the machinery mentioned was to be erected after the making of the deed, it is apparent that there was no standard of measurement in existence at the time of making the deed. Whether, at the time of making the deed, there was any fixed and definite standard of measurement in the contemplation of the parties to the instrument, and, if so, whether such contemplated standard could be proved by parol, may be doubtful under the language employed.

The amount, however, was not left by the deed unlimited. It could only be drawn through some opening in the section of fifteen feet so conveyed. The sides of the passage-way through which the water was to be drawn could not extend on either side beyond the fifteen feet; and we are inclined to think that the bottom of such passage-way could not rightfully be sunk beneath the ordinary bottom of the bulkhead. Besides, it was necessarily implied in the deed that such passage-way should be properly constructed, and of sufficient strength, permanency, and durability not to jeopardize the balance of the bulkhead, and so as not to unnecessarily impair the privilege of others having subordinate rights to draw water from the bulkhead.

But within the boundary limits thus fixed for the passage of the water, there is still another limitation, and that is, the quantity of water which may be needed to operate the machinery which has been or may be erected upon the premises. That limitation may be indefinite and uncertain, depending upon the change of circumstances. For instance, the plaintiff's mill may be shut down for repair, or for removing old machinery and replacing it with new, or for other reasons. Under any of these circumstances, or in case the defendant has a surplus of water, it is very plain that he would have the right to use it, provided, always, that he use it in such a way as not to impair the rights or privileges thus secured to the plaintiff.

Nor do we think that such uncertainty of the limitation, depending upon the necessities of the machinery so erected, in any way frustrated the grant. It is unlike the attempt to convey land by an uncertain description. It is not technically a conveyance of water. There is no property in the water of a river as such. Its value consists in the force and power created while a given quantity is passing from a higher to a lower point. It is the use of the water while running that gives force and consequent power to the

machinery. It is the privilege of diverting and using within the limitations named, that is secured by the deed. The mere fact that the amount of water which the deed thus authorized to be diverted and used was made to vary and fluctuate with changing circumstances, did not defeat or frustrate the right thus granted.

We must therefore hold that the plaintiff has the right to draw from the bulkhead, over or through the fifteen feet thus conveyed, as much water as it may need for the machinery it has erected or may erect on said premises, as construed or defined in this opinion. The defendant, his agents and servants, must therefore be restrained from in any way interfering with, obstructing, impairing, or injuring any of the rights or privileges thus secured to the plaintiff under the deed to Woodward; and the defendant, and all persons claiming under him, must be especially restrained from drawing any water through such conduit pipe when laid, or from said bulkhead, at any time when the same will impair or lessen the amount which the plaintiff has the right or privilege of so drawing; and also be restrained from drawing water through such conduit pipe when laid, or from said bulkhead at any time, to such an extent, or in such a quantity, as will in any way obstruct, diminish, or lessen the quantity of water which the plaintiff has the right or privilege of drawing under the deed to Woodward, as above construed and defined.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in accordance with the principles stated in this opinion.