JAMES R. WHYTE et al., Appellants, v. THE BUILDERS' LEAGUE OF NEW YORK, Respondent.

EASEMENT — WHEN NONE CAN BE IMPLIED FOR SUPPORT, ACCESS AND FOR USE OF WATER AND SEWER PIPES. Where by mutual conveyances of equal date, with full covenants against all incumbrances and without any reservations, one of two adjoining lots is conveyed to one heir and the other lot to another heir, there is no implied easement, in favor of either lot against the other, for support of, or access to, a frame building standing at the time of the ancestor's death, and covering about eight feet of each lot, it being under the same roof as houses on either side, from which it was separated by studding partitions, its chimney standing on the line between the two lots and its entrance being entirely on one of them; nor is there any implied easement as to a common sewer running along the dividing line, or as to a water supply pipe for said building coming through one of the lots, in the absence of a finding that it was necessary that they should pass through one of the lots in order to reach and serve the other.

*Whyte* v. *Builders' League,* 35 App. Div. 480, affirmed.

(Argued October 31, 1900; decided November 16, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 19, 1898, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The judgment determines that the plaintiffs, whose lot adjoins the lot of the defendant, had no easement or appurtenance in the defendant's lot or building either for support or access, or for the use of water and sewer pipes. The trial judge found that Andrew Crawford died in 1874, seized of the two lots in question, fronting upon 126th street in the city of New York, each 25 feet front and rear, and in depth, side by side, 100 feet. Upon the rear of these lots there existed, at the time of his death, three frame houses under one roof; the middle house was separated from the two others by studding partitions, and it covered about eight feet of each lot. The chimney of the middle house stood on the line between the two lots; the entrance to the middle house was on the easterly lot. A common sewer ran along the dividing line, and the water supply pipe for the middle house came through the easterly lot.

In 1880, by conveyances of equal date, with full covenants against all incumbrances, between the heirs at law of Andrew Crawford, the easterly lot was conveyed to Barbara Ewan and the westerly lot to Jessie Whyte, the mother of the plaintiffs, who succeeded to her title upon her death in 1893. Each grantee was a daughter and heir at law of Andrew Crawford. Barbara Ewan conveyed the easterly lot to the defendant July 7, 1897. Up to a short time prior to the last-mentioned date, the owners of the two lots united in renting the middle house to tenants; they divided the rents between themselves. Just prior to the conveyance to the defendant, the middle house was sawn through on the dividing line of the two lots. Before said conveyance the plaintiffs notified defendant that they claimed rights in that portion of the middle house which stood on the easterly lot. After said conveyance the defendant removed the separated part of the middle house which stood

on the easterly lot, thus destroying the sewer connection and water supply to the portion of the house on the westerly lot, and then erected a new building covering nearly the whole of the easterly lot. The plaintiffs arranged their part of the middle house for use with their adjoining house on the westerly lot.

*Charles D. Ridgway* for appellants. Upon the partition of these two lots between plaintiffs' devisor and the defendant's grantor, each held and owned her lot impressed with all the apparent and continuous easements or servitudes which existed over the lots at the time of the partition. (*Lampman* v. *Milks*, 21 N. Y. 505; *Butterworth* v. *Crawford*, 46 N. Y. 349; *Curtis* v. *Ayrault*, 47 N. Y. 73; *Rogers* v. *Sinshimer*, 50 N. Y. 646; *Schile* v. *Brokhahus*, 80 N. Y. 614; *Simmons* v. *Cleman*, 81 N. Y. 557; *Paine* v. *Chandler*, 134 N. Y. 385; *Spencer* v. *Kilmer*, 151 N. Y. 390; *Huttermier* v. *Albro*, 18 N. Y. 48; *Richards* v. *Rose*, 9 Exch. 218; *Wilson* v. *Wightman*, 36 App. Div. 41; *N. Y. C. & H. R. R. R. Co.* v. *Needham*, 29 Misc. Rep. 436; *Pearsall* v. *Westcott*, 30 App. Div. 104.) It was error to dismiss the plaintiffs' complaint because they showed substantial damages as a consequence of the wrongful acts of the defendant. (*Murtha* v. *Curley*, 90 N. Y. 372; *Valentine* v. *Richards*, 126 N. Y. 277; *Lyle* v. *Little*, 28 App. Div. 181.)

*Rudolf Dulon* and *J. Brewster Roe* for respondent. Any easement that the plaintiffs may have had in that part of the middle house which stood on the easterly lot was terminated by the destruction of the building before the defendant took title. (*Heartt* v. *Kruger*, 121 N. Y. 386; *Douglas* v. *Coonley*, 156 N. Y. 521; *White* v. *M. R. Co.*, 139 N. Y. 24; Gerard's Tit. to Real Estate [4th ed.], 774.)

LANDON, J. The plaintiffs in their complaint ask that the defendant restore the middle house and pay damages for interference with their use of it. They rely mainly upon *Rogers*

v. *Sinsheimer* (50 N. Y. 646). That was the case of a party wall, wholly standing upon the plaintiff's lot and two inches inside of his lot. The grantors of both parties took title to their separate lots from the former owner of both, who erected the houses, each supported by the common wall. This court held that the plaintiff could not maintain ejectment for the two inches and a half of the party wall occupied by the defendant " so long at least as the buildings should endure." The justice of recognizing under the circumstances an ease-ment in the party wall separated by only two inches from the defendant's land, so long as the conditions should remain unchanged, is apparent. There was no holding that the plain-tiff could not change the conditions; that he could not tear down his old house and build a better one, or that if he should tear it down the defendant could compel him to restore it. The defendant in that case was permitted to enjoy the party wall while it should last, and also the two inches necessary to its enjoyment. In the case under review, before the convey-ance to the defendant, the middle building was sawn asunder upon the boundary line, and after the conveyance the defend-ant tore down its half of the house and erected a better build-ing in part upon its site. The easement, if there was any, thus reached the limit of its life. But we do not think there was any.

In *Griffiths* v. *Morrison* (106 N. Y. 165) the plaintiff was the owner of two adjoining lots, numbers 141 and 143, and he conveyed to the defendant's grantor No. 141 and retained No. 143. At the time of the conveyance a house stood on the lot conveyed and extended five feet over the line between the two lots and up to a building upon the lot retained by the plaintiff, and the side of the latter building formed the walls of the rooms in the defendant's house; the two buildings, however, were in no wise keyed together. The plaintiff, although he was the grantor, brought ejectment for the five feet and this court sustained his recovery. The court in its opinion mentions the fact that the buildings were not keyed together, and thus one was not needful for the support of the

other, but the judgment rested upon the fact that the plaintiff had conveyed no title to the five feet or easement in it. "If," said PECKHAM, J., speaking for the court, "there had been any thought of conveying that portion of the house which stood on land not conveyed, or of erecting any easement upon the land not conveyed, in the nature of a right of support for the walls cf the building, I think language would have been used which would have made it plain that such was the intention."

So in the case before us. By the mutual conveyances in 1880, by which the entire lot was divided and the westerly half conveyed to the plaintiff's mother and the easterly half to the defendant's grantor, with full covenants and without reservation, the intention to effect a complete severance of the estates was manifested. If the heirs of Crawford, the former owner of both lots, had first conveyed the westerly half and had retained the easterly half, conveying it later, the case would have some features now absent of an intent to vest in the grantee of the westerly half, the plaintiffs' mother, such existing and visible servitudes in the lot retained as would be necessary to the enjoyment of the lot and buildings first sold. (*Lampman* v. *Milks*, 21 N. Y. 505; *Butterworth* v. *Crawford*, 46 N. Y. 349; *Simmons* v. *Cloonan*, 81 N. Y. 557; *Paine* v. *Chandler*, 134 N. Y. 385; *Spencer* v. *Kilmer*, 151 N. Y. 390.)

Here, however, both grants were of the same date, and each grantee was one of the grantors of the other, and both united in the severance of the common estate. Besides, the middle building was apparently a cheap structure. Why divide it by a line which would cut the house and its rooms into two parts if it was intended that each part should continuously support the other forever? The intention seems to be clear that such division was made because it was not expected that the middle house would long exist.

As was said in the *Morrison* case, the character of the easement claimed does not differ in effect from the claim of a fee to the eight feet; it requires the use of that amount of land

belonging to the defendant. It would be intolerable to extend the doctrine applicable to party walls so far as to compel the owner of a lot, in the absence of an express grant or reservation, to maintain or permit its maintenance by the adjoining owner, in the interior of his lot, thus giving to the adjoining owner not only the support of the wall but the dominant use of the intervening space in order to reach his distant support. No case to which we are cited goes so far.

As to the water and sewer pipes, it was not found that it was necessary that they should pass through the defendant's lot in order to reach and serve the plaintiff's lot, and, as there is no grant or reservation of such a privilege, none exists.

The judgment should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, CULLEN and WERNER, JJ., concur.

Judgment affirmed.