MILLER, Appellant, vs. HOESCHLER, Respondent.

*October 28—November 14, 1905.*

*Easements: Implication from necessity: Right of way.*

1. The owner of land has no easement in one part thereof appurtenant to another part, his use of any part being referable to his right as owner.
2. Upon a grant of one portion of the grantor's lands no easement other than a right of way over the other portion will be implied from necessity, unless that necessity be so clear and absolute that without the easement the grantee cannot in any reasonable sense be said to have acquired that which is expressly granted— such a necessity as to render it inconceivable that the parties could have dealt in the matter without both intending that the easement be conferred.
3. Between a lot and a street was a strip of land a few feet wide, belonging to the owner of the lot and used as a part of the front yard of a house on the lot. Exclusive of such strip the house had abundant ground about it for all purposes except passage to the street. *Held,* that upon a devise of the lot no easement as to the strip, except a right of way over it to the street, would be implied.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

From 1870 to the time of his death in 1891, one Joseph Leinfelder owned lots 7, 8, and 9 in a certain platted addition to the city of La Crosse. Such lots lay longitudinally east and west; the east end bounding on an alley and the west end on a government subdivision line. A few feet further west was Ninth street in said city, between the east line of which and the west line of said lots lay a strip of land six feet wide at the south end and sixteen feet at the north end, which did not belong to the platter of said lots. From the time of the purchase of said lots to the time of his death in 1891, Joseph Leinfelder possessed and occupied this strip adversely, so as to have acquired full title thereto. He moved an old house onto the middle lot (8) about four feet east of the west lot line. It fronted toward Ninth street, and, by virtue of the

owner's possession of this strip, had access thereto; such land between the house and the street being used in the ordinary manner as a front yard. Joseph Leinfelder, upon his death in 1891, by will devised to his son Frank lot 9 and fifty feet of lot 8, a total of about 69x140˙ feet of ground, upon which stood the house, which was the only building upon the three lots. He devised lot 7 to another son, but made no disposition of the strip of land lying between these lots and Ninth street, except by a general residuary devise of all property to his six children. Frank Leinfelder continued to use the dwelling house and to occupy and use the strip of land in the same manner as his father had done, namely, as a dooryard for the dwelling house and as a means of access to the street. In 1899 Frank Leinfelder mortgaged to the plaintiff the same premises devised to him by his father, which mortgage was foreclosed and the property bid in by plaintiff in April, 1902, and is still owned by him. On April 25, 1901, all of the children and heirs of Joseph Leinfelder conveyed by quitclaim to the defendant the above-mentioned strip of land along Ninth street and in front of these lots. In 1903 he proceeded to fence the same in, so as to exclude plaintiff from all entry thereon or passage across the same to Ninth street. This action was brought, alleging ownership by adverse possession in the plaintiff, and seeking to enjoin the defendant from any interruption of plaintiff's occupancy and use thereof. The court held against plaintiff's title, but held him entitled to a reasonable right of way of necessity for access to Ninth street, and enjoined defendant from interfering therewith, but refused to enjoin the latter from interfering with the possession and occupation of the rest of the strip as a doorway, for which plaintiff contended as an easement implied from such use of said premises when owned by the same person who owned the lots and house. Plaintiff appeals from the whole judgment, but assigns as error merely the refusal to include injunction against interference with the use of this strip as a dooryard.

For the appellant the cause was submitted on the briefs of *John A. Daniels.* He contended that it is apparent that Joseph Leinfelder intended that the strip in front of each lot should go with the lot. It will not be presumed that he intended to devise a lot and dwelling house to his son to which he had no access and no dooryard, when he himself had both in actual use with the premises. *Collins v. Prentice,* 15 Conn. 39, 38 Am. Dec. 61; *Huttemeier v. Albro,* 18 N. Y. 48; 4 Kent, Comm. 467, and cases cited; *U. S. v. Appleton,* 1 Sumn. 492; *New Ipswich W. L. Factory v. Batchelder,* 3 N. H. 190; *Pyer v. Carter,* 40 Eng. L. & Eq. 410. It is well settled that where the owner of two tenements, or an entire estate, has so arranged and adapted them that one tenement, or one portion of the estate, derives a benefit or advantage from the other of a permanent, open, and visible character, and he sells a portion of the property, the purchaser will take the tenement or portion sold with all the benefits and burdens which so appear at the time of sale to belong to it. It is not necessary in such case that the easement claimed by the grantee be really necessary for the enjoyment of the estate granted. It is sufficient if it is highly convenient and beneficial therefor. *Newell v. Sass,* 142 Ill. 104, 31 N. E. 176; *Cihak v. Klekr,* 117 Ill. 643, 7 N. E. 111; *Janes v. Jenkins,* 34 Md. 1; *Huttemeier v. Albro, supra; Lampman v. Milks,* 21 N. Y. 505, 507; *Dunklee v. Wilton R. Co.* 24 N. H. 489; *Cannon v. Boyd,* 73 Pa. St. 179; *Simmons v. Cloonan,* 47 N. Y. 3; *John Hancock Mut. L. Ins. Co. v. Patterson,* 103 Ind. 582, 53 Am. Rep. 550; *Dillman v. Hoffman,* 38 Wis. 559, 575; *Henry v. Koch,* 80 Ky. 391, 44 Am. Rep. 484; *Jarstadt v. Smith,* 51 Wis. 96; *Galloway v. Bonesteel,* 65 Wis. 79; *Fremont, E. & M. V. R. Co. v. Gayton,* 67 Neb. 263, 93 N. W. 163; Goddard, Easements (Bennett's ed.) 122. The same rule must follow a devise that attaches to a grant. The method of alienation to raise a transfer of a servitude or easement is not material. 23 Am. & Eng. Ency. of Law (2d ed.)

15; *Phillips v. Phillips,* 48 Pa. St. 178, 86 Am. Dec. 577; *Collins v. Prentice,* 15 Conn. 39, 38 Am. Dec. 61. Where the owner of two contiguous pieces of land, one of which is burdened with a servitude in favor of the other, mortgages the dominant estate, the mortgage is a potential severance of the estates, and an easement results in favor of the dominant estate. *Dixon v. Schermeier,* 110 Cal. 582; *John Hancock Mut. L. Ins. Co. v. Patterson, supra.* The adverse possession of the strip of land in connection with the lots continued right along down from Joseph Leinfelder to the appellant, giving the latter absolute title to the strip in front of his lots. Adverse possession may be tacked outside of the call of the deed where there is a succession of relationship to the same thing, whether created by deed or by other acts or by operation of law. 1 Greenl. Ev. (13th ed.) §§ 189, 523; *Hart v. Moulton,* 104 Wis. 349; *Wollman v. Ruehle,* 104 Wis. 603; *S. C.* 100 Wis. 31; *Illinois S. Co. v. Budzisz,* 106 Wis. 499; *Illinois S. Co. v. Bilot,* 109 Wis. 418; *Balz v. Woerpel,* 113 Wis. 442; *Sheeks v. Erwin,* 130 Ind. 31, 29 N. E. 11.

For the respondent there was a brief by *Doherty & Baldwin,* and oral argument by *C. L. Baldwin.*

Dodge, J. The error assigned is the refusal to award to plaintiff an easement over and upon the strip lying between his premises and the street for use "as a dooryard." Doubtless, had plaintiff's grantor owned both the strip and the house and lot, there might have arisen, from the mere exhibition of the premises, an inference of such mutual mistake or fraud as would have aroused an equity in plaintiff's favor. Obviously, however, that grantor could not convey what he did not own, and appellant's claim to an easement must rest on the existence of one in his grantor appurtenant to the premises conveyed. If the grantor, Frank Leinfelder, had any such easement, it must have arisen by implication upon the devise to him from Joseph Leinfelder of lots 8 and 9. No easement

existed in Joseph appurtenant to the premises on which he located the house, for he owned the whole, and his use of any part is referable to his right as owner. *Mabie v. Matteson,* 17 Wis. 1, 10; *Randall v. Sanderson,* 111 Mass. 114; *Buss v. Dyer,* 125 Mass. 287. Did he create one by that devise?

The scope of the doctrine of implication of an easement over one portion of a grantor's lands in favor of the other portion, either granted or reserved, upon sale of either portion, is in much confusion in the United States. The rule in England, as quoted and adopted in perhaps the most cited of the earlier American cases, *Lampman v. Milks,* 21 N. Y. 505, 507, is in effect as follows:

"Where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement, or portion sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains. . . . The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts."

This rule, which, by the way, is said to be entirely reciprocal and to apply equally to the granted and the reserved portion, is very broad in terms, and in England has been given application accordingly, so as to support easements over adjoining premises for light and air and for lateral support of buildings, so as to preclude the owner of the servient estate from building or excavating thereon. In the states where the rule has been adopted in terms, its application has been quite limited, and in some of them an early tendency to liberality has been followed by a later strictness of limitation. See *Griffiths v. Morrison,* 106 N. Y. 165, 12 N. E. 580; *Whyte v. Builders' League,* 164 N. Y. 429, 58 N. E. 517; *Keats v. Hugo,* 115 Mass. 204; *Buss v. Dyer,* 125 Mass. 287. The following are illustrative cases of application of the rule above stated: *Dixon v. Schermeier,* 110 Cal. 582, 42 Pac. 1091;

*Fremont, E. & M. V. R. Co. v. Gayton,* 67 Neb. 263, 93 N. W. 163; *Janes v. Jenkins,* 34 Md. 1; *Cihak v. Klekr,* 117 Ill. 643, 7 N. E. 111; *Dunklee v. Wilton R. Co.* 24 N. H. 489; *Henry v. Koch,* 80 Ky. 391; *Cannon v. Boyd,* 73 Pa. St. 179; *John Hancock Mut. L. Ins. Co. v. Patterson,* 103 Ind. 582, 2 N. E. 188; *Lammott v. Ewers,* 106 Ind. 310, 6 N. E. 636.

It is, of course, apparent that this rule has its reason in presumption of intended permanence. of real estate arrangement supposed to be in the minds of the grantor and the grantee. Whatever may be true in older communities, it would be difficult to find justification for any such presumption in a new and developing country, and especially in the cities. There, instead of permanence, change is to be expected—is indeed essential to prosperity. As the city grows, large grounds appurtenant to residences must be cut up to supply more residences near to business, and it must be expected that land will be occupied by the apartment building covering all the ground of the owner. The cistern, the outhouse, the cesspool, and the private drain must disappear in deference to the public waterworks and sewer; the terrace and the garden, to the need for more complete occupancy. Hence there can be but slight reason to suppose that, upon the sale of that part of an entire tract on which stands a house, it is intended permanently to subject other parts of the tract to such obsolescent uses, although the owner of the whole had so devoted them. This is even more obvious in the business parts of a city, where the row of ancient barracks with their exterior appurtenances must give way to modern business blocks occupying to the full limits of the owner's land. It is so easy, in conveying a defined piece of land, to express either any limitations intended to be reserved over it, or to be conveyed with it over other land, that the necessity of raising any such grant or reservation by implication is hardly apparent. Courts of equity can afford relief where the grant is not of that under-

stood by both parties to be conveyed, or so understood by one by inducement of the other. Such rights outside the limits of one's proper title seriously derogate from the policy of both our registry statutes and our statute against implication of covenants in conveyances. That policy is that a buyer of land may rely on the public records as information of all the conveyances, and upon the words of the instruments for all rights thereunder. For these and other reasons we are persuaded that the English rule above quoted, if applied to the full extent of its words, would be against public policy, and would produce results contrary to the real understanding of parties more often than the reverse.

The subject received discussion, *somewhat obiter,* at the pen of RYAN, C. J., in *Dillman v. Hoffman,* 38 Wis. 559, where many of the 'foregoing considerations are mentioned, and doubt is suggested whether any enlargement of the doctrine of implied easement, beyond rights of way strictly necessary to the use of the dominant estate, is at all wise. Largely on authority of that case, necessary rights of way have been held implied in several cases. *Jarstadt v. Smith,* 51 Wis. 96, 8 N. W. 29; *Galloway v. Bonesteel,* 65 Wis. 79, 26 N. W. 262; *Johnson v. Borson,* 77 Wis. 593, 46 N. W. 815; *Benedict v. Barling,* 79 Wis. 551, 48 N. W. 670. With exception of that particular type, however, we find no instance where any other easement has been held implied in this state, but, on the contrary, denial of such rights as might well have found support, both in the words of the rule above mentioned and in the decisions from other states above cited. In *Fischer v. Laack,* 76 Wis. 313, 319, 45 N. W. 104, it was said that no easement could arise save "by grant or prescription or, in the case of a right of way, by necessity," and a very strict meaning was adopted in considering the necessity even of a right of way, as also in *Pentland v. Keep,* 41 Wis. 490, 499. In *Mabie v. Matteson,* 17 Wis. 1, it was held that, where an owner of two mills and dams on same river sold the lower,

there was no implied appurtenant easement to have the upper operated as a mere reservoir for the one sold, although the owner had always so used and operated them; this, partly on the ground that it was not necessary to the enjoyment of the lower property in the sense of "that without which the grant itself would be of no effect" (Broom, Leg. Max. 7th ed. *479); although it was clearly necessary to full enjoyment as the former owner had used it.   In *Valley P. & P. Co. v. West,* 58 Wis. 599, 17 N. W. 554, an owner of an entire tract with appurtenant dam, water power, and bulkhead sold a part with fifteen feet of the bulkhead and the privilege of using so much water as might be needed.   He was held to have no reserved easement to prevent a change of the opening in said fifteen feet of bulkhead so as to allow a larger flow of water to the grantees.   In *Duncan v. Rodecker,* 90 Wis. 1, 62 N. W. 533, is an *obiter* intimation that, upon sale of a building bounded by a party wall on the reserved premises, there would be an implied grant of easement in the land under the wall for its support.   The point, however, was not decided.

We cannot avoid the conclusion that, even if in some extreme cases there must be any easement other than right of way implied from necessity, that necessity must be so clear and absolute that without the easement the grantee cannot in any reasonable sense be said to have acquired that which is expressly granted; such indeed as to render inconceivable that the parties could have dealt in the matter without both intending that the easement be conferred.   To that effect is the tendency of our own cases and, we think, of the later decisions in both Massachusetts and New York.   Such strict limitation we believe to be in accord with the popular conception upon which real estate has been and is daily being conveyed in Wisconsin and to be essential to easy and rapid development at least of our municipalities.   We deem it clear that no such necessity appears in this case to warrant an implication that, when Joseph Leinfelder devised certain specified land to

Frank, he also granted an easement over his other lands for use as a dooryard. Certainly such occupancy was not "that without which the grant itself could be of no effect." The house had abundant ground about it for all purposes except passage to the street, and that is provided for in the judgment. Many houses serve their purpose of habitation without any outlook upon a street. We can conceive but little benefit from the strip in any sense essential to occupation of the house and lot, except such as is involved in the so-called easement of light and air, including unobstructed vision. But that, as we have seen, is a right repudiated generally in America, except by express grant. The decision of the trial court was sufficiently favorable to appellant.

*By the Court.*—Judgment affirmed.