**In the Matter of Keith L. LAMPERT and Arlene M. Lampert, Debtors.**

**Bankruptcy No. MM7-85-01006.**

United States Bankruptcy Court, W.D. Wisconsin.

May 28, 1986.

---

David C. Moore, Janesville, Wis., for debtor.

Harry J. O'Leary, Janesville, Wis., for creditor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

By their motion the debtors seek to avoid a mortgage on their cottage home under section 506(d) of the Bankruptcy Code. The cottage is located on leased land adjacent to the Rock River north of Janesville. In 1976 the debtors contracted to purchase the cottage and entered into a five-year lease for the land. The lease was re-executed in 1981 for an additional five-year term. Mrs. Lampert has re-executed the lease solely in her own name for another five-year term beginning in August of 1986.

Sometime after purchasing their cottage the Lamperts obtained farm credit from Production Credit Association ("PCA"). In 1982, following a decline in the value of PCA's farm collateral, the Lamperts granted PCA a mortgage ("the mortgage") on their cottage as additional security.[1] The mortgage is limited by its own terms to the cottage and excludes the Lamperts' leasehold interest in the land upon which the cottage sits. The debtors seek to avoid the mortgage on the theory that the collateral is worth nothing and therefore there is no interest of the estate in property to which PCA's mortgage can attach. The debtors' theory is based on their contention that if PCA is allowed to foreclose and obtain possession of the cottage, the cottage will have no value because the debtors will refuse to sell or assign their leasehold interest to PCA and will require that PCA remove the cottage from the land.[2] The parties have stipulated that the value of the cottage if removed would be zero. Although the Lamperts have exempted their

---

1. The debt secured by the mortgage is now between $9,000.00 and $10,000.00. It is subject to a first lien in favor of the land contract vendor in the approximate amount of $3,900.00.

2. The debtors have exempted their leasehold interest in the land under section 522(d)(1) of the Code.

interest in the ground lease they do not appear to have exempted their interest in the cottage itself.

Two principal issues are presented for decision. The first is whether PCA's mortgage is benefitted by the debtor's leasehold interest in the land. The second is whether the mortgage, and thus PCA's allowed secured claim under section 506 of the Code, has any value. The determination of each issue depends in large part upon the allocation of the burden of proof.

■■■ The general rule with respect to claims filed in bankruptcy is that while a claim carries a prima facie presumption of validity (*see* 11 U.S.C. § 502(a)), the ultimate burden of persuasion is upon the claimant once an objection to the claim is made and evidence tending to rebut the prima facie presumption of validity is introduced. *Whitney v. Dresser*, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906). *See In re Winer*, 39 B.R. 504, 508 (Bankr. S.D.N.Y. 1984); *In re Collins*, 2 B.C.D. 555, 557 (Bankr.S.D.Ala.1975); *In re Conklin's, Inc.*, 14 B.R. 318 (Bankr.D.S.C.1981); *In re Record Club of America, Inc.*, 18 B.R. 456 (Bankr.M.D.Pa.1982); *In re Kontaratos*, 35 B.R. 135 (Bankr.D.Me.1983), *affirmed, sub. nom United States v. Kontaratos*, 36 B.R. 928 (D.Me.1984); *In re Ashline*, 37 B.R. 136 (Bankr.N.D.N.Y.1984). Although the opinions cited above arise within the context of the allowability of claims under section 502, there seems to be no reason why the same rule should not apply to the determination of secured status under section 506. The debtor has introduced sufficient evidence to overcome the initial presumption of validity of PCA's secured claim; therefore, the burden of persuasion shifts to PCA to adequately demonstrate both the extent of its lien and the value of the collateral which secures its claim.

■■ The extent of PCA's lien must be determined by reference to the intention of the parties as expressed in the mortgage. The relevant portion of the mortgage provides:

TO SECURE THE INDEBTEDNESS, Mortgagor, by this instrument, does hereby grant, bargain, sell, convey and mortgage unto PCA, its successors and assigns, forever, all of the following-described real estate located in Rock County, Wisconsin, legally described as follows: A one family, frame, cottage, fixtures and personal property located at Section 15, T3N, R12 East, Town of Janesville, Rock County, on leased land owned by Georgiene Snyder [sic.] (*this does not involve the sale of any right, title or interest of the land on which said cottage, fixtures or personal property are located....*) (emphasis added).

On its face the mortgage is clear that the debtor's leasehold interest in the land is not part of the security for the loan. Even if there were any ambiguity in the emphasized language such ambiguity would have to be construed against the mortgagee under Wisconsin law. *See Capocasa v. First National Bank*, 36 Wis.2d 714, 720, 154 N.W.2d 271, 274–75 (1967). In light of the clear statement in the mortgage and the fact that PCA bears the burden of proof as to any factual ambiguity concerning the mortgage terms it is necessary to conclude that the mortgage reaches only the cottage and not the debtor's exempt leasehold interest in the lot.

■ The debtors currently lease the land on a five year lease at $200.00 per year. Mrs. Lampert has entered into a new five year lease which begins in August of 1986. Both the present lease and the lease beginning in 1986 contain a renewal clause which provides for an additional five year lease with rent to be based on the current annual rate with appropriate adjustments for increases in real estate taxes and in the consumer price index.[3] The extension

---

**3.** Clause 2 of the land lease provides:

2. This lease may be extended for additional periods of five (5) years each. The rent for the extension of this lease shall be determined by agreement of the parties. The rental for

the extension of the lease shall be such sum as arrived at by adjusting the base rent set forth above upwards or downwards by the amount of the consumer price index change between the date of the signing of this lease and the

clause creates a binding option in favor of the current lessee. Even if the language of the lease were ambiguous and suggested something other than a binding option the ambiguity would be resolved in favor of the lessee. *See Fergen v. Lyons,* 162 Wis. 131, 135, 155 N.W. 935 (1916). Therefore Mrs. Lampert has the exclusive right to possession of the leasehold upon the exercise of the lease option until at least August of 1996.

In determining the value of the cottage the court must follow the standard set by section 506(a) of the Code which provides that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). Although the present matter presents rather unusual circumstances considerable insight may be obtained by examining the various types of valuation problems presented in other cases.

The general rule appears to be that the value of collateral should be determined according to the standard of "commercially reasonable disposition." *See In re Damron,* 8 B.R. 323 (Bankr.S.D.Ohio 1980); *In re Savloff,* 4 B.R. 285, 6 B.C.D. 349 (Bankr. E.D.Pa.1980). Only in the rarest circumstances should the court utilize a "forced sale" valuation. *See id.* The proper valuation standard required by the "commercial reasonableness" test will usually result in a value somewhere between "distress" and retail valuation. *Damron,* 8 B.R. at 326. The concept of judicial valuation under section 506(a) requires the court to determine what value a prudent person in business, seeking maximum reasonable return on collateral, would receive by disposing of the collateral through established commercial channels. *See In re QPL Components, Inc.,* 20 B.R. 342, 345 (Bankr.E.D.N.Y. 1982). In this proceeding the parties have stipulated that the "removed value" of the cottage is nil. From that stipulation I must infer that the cost of removal equals or exceeds the value of the cottage. The debtors have stated in effect that they would require PCA to remove the cottage from the land were PCA to foreclose on its lien.[4] Alternately the parties have stipulated that the "in place" value of the cottage is $17,000.00 assuming the cottage owner is able to perpetually lease the land. Neither side has introduced expert testimony or other evidence as to the separate values of the cottage or the debtor's leasehold interest.

Bearing in mind the burden of proof which PCA must carry and the lack of

---

date of the termination of the initial five (5) year period. There shall also be an increase [sic] rental for the change in real estate taxes attributable to the land which is the subject of this lease. Said rent shall be payable annually in advance of the anniversary date of the lease.

**4.** It is somewhat unclear to what extent the debtors could force PCA to remove the cottage. Clauses 5 and 10 of the debtors' current land lease (and the same clauses in Mrs. Lampert's renewal lease) provide:

5. At the expiration or termination of this lease all improvements and fixtures on the lot which is the subject of this lease shall belong to the lessee(s). If the lessee(s) removes part or all of the improvements and fixtures on the lot which is the subject of this lease, the lessor may require the lessee(s) to remove part or all of the remaining improvements upon the lot. If the lessor requires such removal the lessee(s) shall have a reasonable time, not to exceed sixty (60) days, to remove the improve-

ments. The lessor may also require the lessee(s) to remove all foundations, piping, electrical wiring, septic tanks and drain-fields, and shall fill all holes with the material of the same quality as the surrounding soil and shall level said land with the surrounding lots.

. . . .

10. This cottage is not be sold, conveyed, leased, assigned, transferred, or in any way disposed of without the written consent of the lessor, her personal representatives, administrators, heirs, or assigns. Said consent shall not be unreasonably withheld. It is agreed and understood by the parties to this lease that this lease is to be binding upon the heirs, administrators, personal representatives and assigns of the parties.

In addition to restricting the Lamperts' ability to remove the cottage clause 10 also restricts the ability to convey any interest in the cottage during the term of the lease. There is no evidence in the record as to whether written consent to the PCA mortgage was ever granted by the lessor.

evidence presented it is necessary to conclude that a "commercially reasonable disposition" is entirely dependent upon PCA's ability to obtain an interest in the leasehold. This is so because no prudent person would foreclose on the cottage under circumstances where the required cost of removal would equal or appear to exceed the value of the cottage. Similarly, were PCA to attempt to sell its mortgage rights to a commercial buyer, the interest would prove to be unsaleable unless the leasehold rights could be obtained simultaneously. Thus, unless PCA has implied rights in the debtor's leasehold interest its lien is worthless.

■ In the absence of any suggestion or assistance from counsel, I have made a diligent effort to determine if PCA can assert any implied rights with respect to the leased land. The only apparent basis upon which PCA arguably might assert an interest in the leasehold is the doctrine of easement by implication. *See* 25 Am. Jur.2d Easements §§ 24–38 (1966). An easement by implication is a presumption of a grant not contained in the language of a deed arising from the circumstances of the case. *Rischall v. Bauchmann*, 132 Conn. 637, 46 A.2d 898, 165 ALR 559 (1946). *See McKeon v. Brammer*, 238 Iowa 1113, 29 N.W.2d 518, 174 ALR 1229 (1947). The majority rule appears to be that an easement by implication may arise whenever such easement is reasonably necessary to the just enjoyment of the property conveyed to the grantee by the owner of an adjacent parcel. *See e.g. Packard v. Smart*, 224 N.C. 480, 31 S.E.2d 517, 155 ALR 536 (1944); *Powers v. Ward*, 200 Ky 478, 255 S.W. 105, 34 ALR 230 (1923). Thus a grantor who sells an enclosed piece of land which has no access to the public highway impliedly grants a right of access through his own adjacent lands. *Thomas v. Morgan*, 113 Okl. 212, 240 P. 735, 43 ALR 934 (1925). The doctrine of easement by implication appears to apply to leasehold interests as well as freehold interests. *See Tong v. Feldman*, 152 Md. 398, 136 A. 822, 51 ALR 1291 (1927).

■ Wisconsin, following the minority rule, applies a stricter standard to the creation of easements by implication. Although early cases do not appear to have definitely limited easements by implication to grants of right-of-way, *see e.g. Galloway v. Bonesteel*, 65 Wis. 79, 26 N.W. 262 (1886), the rule of later cases appears to be much stricter. As early as 1905 the Wisconsin Supreme Court took the position that public policy in Wisconsin strongly opposes the implication of covenants in conveyances. *See Miller v. Hoeschler*, 126 Wis. 263, 105 N.W. 790 (1905). Thus Wisconsin rejected the traditional English rule which allowed for many sorts of implied easements. In the *Miller* case the court suggested that except in extreme cases no implied easements would be recognized except for rights-of-way strictly necessary to the use of the dominant estate. *See id.* at 269–70, 105 N.W. at 792. The court stated that in all other cases the "necessity must be so clear and absolute that without the easement the grantee cannot in any reasonable sense be said to have acquired that which is expressly granted." *Id.* at 270, 105 N.W. at 792. In *Bullis v. Schmidt*, 5 Wis.2d 457, 93 N.W.2d 476 (1958), the court reiterated the rule of *Miller v. Hoeschler* that the necessity for any easement other than a right-of-way must be so clear and absolute that without the easement the grantee cannot enjoy the normal use of the property for which he bargained. *Bullis*, 5 Wis.2d at 462, 93 N.W.2d at 480. *See Sicchio v. Alvey*, 10 Wis.2d 528, 103 N.W.2d 544 (1960). Likewise, "rights of way of necessity" are not favored in Wisconsin. *See e.g. Backhausen v. Mayer*, 204 Wis. 286, 234 N.W. 904 (1931). Even in a case of "absolute necessity" it appears to be the rule that the express provisions of a deed will control over any implied conveyance of an easement. *See Galloway v. Bonesteel, supra*, 65 Wis. at 83–84, 26 N.W. 262 and cases cited therein.

Considering the statement of the parties' intentions contained in the property description clause of the mortgage, it is impossible to conclude that PCA obtained any easement rights with respect to the debt-

ors' leasehold interest. PCA would have to be granted far more than a "right of way of necessity," in order to grant it an effective easement. The easement would have to cover the ground on which the cottage is physically located. This result would violate the strict Wisconsin policy against easements by implication, since PCA's need for such an easement would not be "absolutely necessary" within the meaning of the cases. The only "absolutely necessary" implied right in PCA's favor would be the limited right to enter on the premises and remove the cottage upon foreclosure. Without that right PCA would in actuality have received nothing from the mortgage. Implying any broader right would be unwarranted under Wisconsin law.

The debtor will certainly receive a windfall, but the only conclusion to be reached is that PCA bargained for and obtained only the right to foreclose on and remove the cottage itself. It can only be assumed that at the time PCA entered into this apparently improvident mortgage, it had not considered how costly removal of the cottage might be. Since PCA's collateral is worthless PCA has no secured claim in the debtors' bankruptcy case and its lien on the debtors' cottage is void under 11 U.S.C. § 506(d).

It may be so ordered.