GEORGE P. REID v. R. V. KING.

(Filed 23 December, 1911.)

1. Contracts—Oral—Party Walls—Abutting Owner—Agreement to Pay—Equity—Statute of Frauds.

A parol agreement between adjoining owners of lands that one should build a division wall partly on the lands of each owner and for the use of both, for which the other was to pay one-half of the cost in the event he should thereafter use it, is enforcible in equity after the wall has been built by the one and the other has used it accordingly; and being enforced upon equitable principles, it does not fall within the meaning of the statute of frauds, which requires that a contract concerning lands or interests therein be in writing.

2. Same—Easement—Deeds and Conveyances—Subsequent Purchasers with Notice.

By parol agreement between the owners of adjoining lots, one of them built a brick building on his own land, one wall of which rested partly on the lands of the other, and one-half the cost of its erection was to be paid by the other party when he should use it: *Held,* the effect of this agreement was to create cross-easements as to each owner, which would bind all persons succeeding to the estates to which the easements are appurtenant, and in equity a purchaser of the estate of the owner so contracting, having notice of the agreement, would take it with the liability to pay one-half the cost of the wall, whenever he availed himself of its benefits.

3. Same—Incorporeal Hereditaments.

When by parol agreement one owner of lands has built a party wall one-half upon his own land and the other half upon that of an adjoining owner, and the latter had agreed to pay

for one-half of the wall when he should use it, equity, to give
effect to the agreement, will regard the agreement as creating
an incorporeal hereditament (in the form of an easement) out
of the unconveyed estate, rendering it appurtenant to the one
conveyed, and binding upon the title of subsequent assignees
with notice.

### 4. Courts—Form of Action—Equity—Pleadings.

Actions at law and suits in equity being adjudicated and de-
termined under our statute by the same tribunal, equities will
be administered therein where they sufficiently arise upon the
allegations of the pleadings, without regard to the form or man-
ner in which they are alleged.

APPEAL from *Justice, J.,* at July Special Term, 1911, of
RUTHERFORD.

This action was brought by the plaintiff to recover one-half
the cost of erecting a party wall on the line dividing the lots of
the parties.

The following are the facts, as gathered from the pleadings
and proofs: In 1904 the plaintiff and one Edward Thompson
were the owners of adjoining lots in the town of Forest City,
N. C. The plaintiff, in 1905, erected a two-story brick building
on his lot in such manner that the eastern wall thereof rested
one-half on his lot and the other half on the lot of Thompson;
at the time plaintiff erected his building he entered into a
verbal agreement with Thompson, providing that he might con-
struct the east wall of the building on the dividing line of the
two lots, so that one-half thereof would rest on each lot, and that
the said Thompson, should he ever build on his lot, might join
his building to the east wall of plaintiff's building upon his pay-
ing plaintiff one-half the value of the wall at the time he should
make use of the same, and if Thompson should decide not to
build on his lot, but should sell the same, then and in that case
he should give plaintiff the first offer to purchase his lot, and if
he sold to another he would make known to him the terms of
the contract between him and the plaintiff in reference to the
use of the wall. After plaintiff had erected his building, Thomp-
son sold his lot to defendant, but before selling it to him he
informed him of the terms of his agreement with the plaintiff.
Thereafter the defendant erected a two-story brick building on

REID *v.* KING.

his lot, and in doing so used the east wall of plaintiff's building as the west wall of his (defendant's building); the defendant, at the time he purchased the lot from Thompson and at and prior to the time he used plaintiff's wall, had actual notice and full knowledge of the agreement between plaintiff and Thompson.

Defendant testified, in part, as follows: "After Dr. Reid had built, I went to Mr. Thompson and told him I wanted to buy the lot, and he said he was thinking of building himself; he further told me that when Dr. Reid built the wall he came to him and said his lot was narrow and he wanted to build the wall half on his (Thompson's) lot; he said he told Reid to go ahead and if he (Thompson) built, he would pay for one-half the wall, and if he did not build, he would give Reid the refusal of the lot so he could get the advantage of the wall. That was all he ever said to me about the wall until after he made me a deed."

The jury returned the following verdict:

1. Is defendant indebted to plaintiff? Answer: Yes.

2. What was the actual cost of erecting the wall as of the date that defendant joined to the wall? Answer: $625.

The court instructed the jury that, upon the admissions in the pleadings and evidence, they should answer the first issue "Yes," and that they would find, upon the testimony, the actual cost of erecting the wall as of the date the defendant joined his building to it, and answer the issue accordingly.

Judgment was entered upon the verdict, and defendant appealed.

*McBrayer, McBrayer & McRorie for plaintiff.*
*Ryburn & Hoey and M. L. Edwards for defendant.*

WALKER, J., after stating the facts: It has generally been held in cases of this kind that there can be no recovery *at law* for the use of a party wall, built by one of the adjoining proprietors, against the other, but the remedy must be sought in a court of equity. The governing principle is nowhere better expressed than by *Chancellor Kent* in the leading case of *Campbell v. Messier,* 4 Johns. Ch. (N. Y.), 334. It will be well to state

the facts before referring directly to the opinion of the Court:
Two parties living in the city of New York, on adjacent lots
and having on the common line of their buildings a ruinous
party wall unfit to stand, and one of the persons thus situated
being desirous of rebuilding, proposed to the other coterminous
proprietor to unite with him in rebuilding the party wall, but
this request was refused. Whereupon Campbell, the proposer,
proceeded to tear down his own house, as well as the party wall,
and rebuilt both. Thereafter Messier, who had refused to assist
in rebuilding the party wall, devised his property to his son, who
thereafter sold the lot to Dunstan, and in the deed expressly
conveyed to the latter the use of the party wall for building, and
covenanted to indemnify him for so using it. Dunstan then
pulled his house down and erected a new one, and in so doing
made use of the party wall, but refused to pay his propor-
tionate share of that wall. Campbell then sued him in an ordi-
nary action, but was nonsuited on the ground that he had no
remedy at law. On this Campbell filed his bill against both
Messier and Dunstan, praying that the defendants be decreed to
come to a settlement with him touching the building of the party
wall, and to contribute and pay one-half of the value thereof,
etc. Upon this state of facts the prayer of the bill was granted,
and a decree entered accordingly, *Chancellor Kent* remarking:
'I have not found any adjudged case in point, but it appears to
me that this case falls within the reason and equity of the doc-
trine of contribution which exists in the common law, and is
bottomed and fixed on the general principles of justice.' In *Sir
William Harbert's case,* 3 Co., 11, and in Bro. Abr., tit. Suite
and Contribution, many cases of contribution are put, and the
doctrine rests on the principle that where the parties stand *in
equali jure,* the law requires equality, which is equity, and one
of them shall not be obliged to bear the burden in ease of the
rest. It is stated in F. N. B., 162b, that the writ of contribution
lies where there are tenants in common, or who jointly hold a
mill, *pro indivisa,* and take the profits equally, and the mill falls
into decay, and one of them will not repair the mill. The form
of a writ is given to compel the other to be contributory to the
reparations. In *Sir William Harbert's case* it was resolved that

'when land was charged by any tie, the charge ought to be equal, and one should not bear all the burden; and the law on this point was grounded in great equity.' . . . The doctrine of contribution is founded, not on contract, but on the principle that that equality of burden as to a common right is equity, and the solidity and necessity of this doctrine were forcibly and learnedly illustrated by *Lord Ch. Baron Eyre* in the case of *Dering v. Earl of Winchelsea,* 1 Cox's Cases, 318. . . . The obligation arises not from agreement, but from the nature of the relation, or *quasi ex contractu,* and as far as courts of law have in modern times assumed jurisdiction upon this subject, it is, as *Lord Eldon* said (14 Ves., 164), upon the ground of an implied assumpsit. The decision at law, stated in the pleadings, may therefore have arisen from the difficulty of deducing a valid contract from the case; that difficulty does not exist in this Court, because we do not look to a contract, but to the equity of the case, as felt and recognized according to *Lord Coke* in every age by the judges and sages of the law." And the cause was referred to a master to ascertain the cost of the wall. Afterward, the cause coming on again before the chancellor, he ruled that the expense of rebuilding the wall was an equitable charge on the wall, and the owner for the time being, exercising his right in the new wall, was equitably bound to contribute ratably to the expense of the necessary reparation. And Dunstan, having purchased with actual notice of the charge or claim, was ordered to pay the moiety of the expense of rebuilding the wall. That decision, which has been approved and followed in many jurisdictions, would seem to be sufficient authority against the contention of the defendant in this case, and we deem it to be the only just and reasonable view to take of the question.

It is not important for us to inquire or to decide whether an action at law will lie for one-half the cost of erecting the wall, as we have abolished all forms of actions and the distinction between legal and equitable remedies, and a party now recovers according to the allegations of his pleadings. *Voorhees v. Porter,* 134 N. C., 591; *Cheese Co. v. Pipkin,* 155 N. C., 394; so that if the plaintiff has made a sufficient allegation of facts in his complaint to entitle him to equitable relief, the Court will award '

it, without regard to the form or manner in which they are alleged. We think he has done so, and there was proof to establish them, as will appear from the foregoing statement of the facts.

It has been said, though, that *indebitatus assumpsit,* being of an equitable nature, will lie for an adjoining owner's share of the cost of building a party wall, and a recovery has been allowed in that form of action. *Huck v. Flentye,* 80 Ill., 258. A case much like ours in its facts is *Rindge v. Baker,* 57 N. Y., 209, in which it appeared that two adjoining proprietors entered into a parol agreement to jointly build a party wall, one-half on the premises of each, and accordingly built a portion of the wall, but one of them refused to proceed with its construction; the other having planned his building in reliance on the contract being performed, was held not confined to his remedy for specific performance, but was permitted to complete the wall and to recover of the other proprietor, in an equitable action, one-half of the expense. To the same effect is *Sanders v. Martin,* 2 Lea, 213. Numerous authorities sustain the proposition that such a recovery may be had under the equitable principle of contribution, against the defaulting proprietor, or his assignee with notice of the contract, one of the strongest of them being *Sharp v. Cheatham,* 88 Mo., 498, where the subject is treated exhaustively and with great learning and a copious citation of cases by *Justice Sherwood.* The effect of such an agreement is to create cross-easements as to each owner, which binds all persons succeeding to the estates to which the easements are appurtenant, and a purchaser of the estate of the owner so contracting would take it burdened with the liability to pay one-half the cost of the wall, whenever he availed himself of its benefits. 88 Mo., *supra.* The language of courts and of judges has been very uniform and very decided upon this subject, and all agree that whoever purchases lands upon which the owner has imposed an easement of any kind, or created a charge which could be enforced in equity against him, takes the title subject to all easements, equities, and charges, however created, of which he has notice. 88 Mo., *supra.* *Lord Cottenham* said, in *Tulk v. Moxhay,* 2 Phil. (Eng. Ch.), 774: "If an equity is attached to prop-

erty by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." But although the covenant, when regarded as a contract, is binding only between the original parties, yet in order to give effect to their intention it may be construed by equity as creating an incorporeal hereditament (in the form of an easement) out of the unconveyed estate, and rendering it appurtenant to the estate conveyed; and when this is the case, subsequent assignees will have the rights and be subject to the obligations which the title or liability to such easement creates. A purchaser of land, with notice of a right or interest in it existing only by agreement with his vendor, is bound to do that which his grantor had agreed to perform, because it would be unconscientious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to the estate of which he had notice when he became the purchaser. 88 Mo., *supra; Spencer's case,* 1 Smith L. C. (6 Ed.), p. 167. See also *Spaulding v. Grundy,* 126 Ky., 510, and cases cited; *Richardson v. Tobey,* 121 Mass., 457; 30 Cyc., 788 and 795. It would be useless to multiply authorities, as the most of them will be found in the cases already cited.

There can be no question but that the defendant had full notice of the transaction when he bought from Thompson, and is as much affected by the equity as Thompson would have been, if he had not sold the lot.

The statute of frauds does not apply. The equity arises regardless of any promise except, perhaps, that which is fairly implied by law. 20 Cyc., 282; *Pitt v. Moore,* 99 N. C., 85; *Ray v. Honeycutt,* 119 N. C., 510; *Tucker v. Markland,* 101 N. C., 422. No point was made as to the amount of the liability, and it seems that the plaintiff recovers less than one-half of the amount it cost him to build the wall.

We find no error in the case.