FORDE ET AL. v. LIBBY ET AL.
(No. 777.)

Easements—Private Way—Reservation in Deed—Executed Parol License—Estoppel—Statute of Frauds—Equity—Injunction.

1. A reservation of a private way in a deed accepted by the grantee is equivalent to a grant of the easement by the grantee to the grantor, and is as effective for that purpose as though made by a separate deed.

2. In view of the statute providing that the term "heirs", or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, such words are not necessary to render effectual the reservation of an easement for a private way by a proviso in a deed, which is equivalent to a conveyance of the easement to the grantor.

3. The wording of a proviso in a deed referring to an easement for a private way, in view of the situation of the

premises, *held,* to disclose an intention of the parties to reserve such easement.

4. Where one of several owners of adjoining city lots, who had orally agreed to set aside a strip on the dividing line as a private alley, conveyed his lot to another by deed reserving said strip as a right of way for the purpose of the alley, the easement was established by deed, and not by parol evidence of a revocable license, for the benefit of the premises of the other owners and their respective grantees, entitling the latter to enjoin the closing of the alley.

5. A parol license may ripen into an easement when the licensee has expended money and the license has become executed.

6. Where several owners of adjoining lots had orally agreed to set aside a strip as a private alley on a dividing line running from a street to a public alley, and the buildings and fences had been constructed pursuant to such agreement, a grantee who had been informed as to the existence of such private way when negotiating his purchase, and observed the physical conditions, must be held to have had notice of the right of the other owners to use the alley, and the same was notice of the title of his grantor and the extent of the title intended to be conveyed; it appearing that the original owners and parties to the oral agreement had become interested in maintaining the alley because of the construction of their improvements with reference to it.

7. Such easement was established by estoppel by the acts and conduct of the original parties, and as between them they and their grantees were each estopped from denying the easement.

8. The agreement setting aside the strip for use as a private alley was not a bare oral agreement, but one relied and acted upon by the parties, who had improved their property with reference to and the right to use the private alley in connection with their premises, thus taking the agreement out of the statute of frauds and placing it within the domain of equity, and controlled by the equitable principle that a party and his privies ought to be estopped and denied the right to repudiate his acts when they have been relied and acted on, and when to do so would operate as a fraud or work an injustice.

9. One's conduct, acts, or language, written or spoken, to induce another to act, and who has so acted at great expense, is sufficient to preclude him from repudiating his consent to such acts.

10. Where, after an oral agreement by several owners of adjoining city lots to set aside a strip along a dividing line for use as a private alley, the lots as re-arranged were known and intended by the parties to be used for residence purposes without limit as to time, it will be presumed that the parties intended the alley to be of as permanent a character as the use and occupancy of the lots, and a court of equity will protect by injunction the right of one so entitled to use the alley.

[Decided November 16, 1914].                    (143 Pac. 1190).

ERROR to the District Court, Laramie County; HON. CARROLL H. PARMELEE, Judge.

The material facts are stated in the opinion.

*William C. Kinkead,* for plaintiffs in error.

The alleged oral contract was too indefinite and uncertain to be enforced in equity. It is also unenforceable because within the statute of frauds. Libby and Hinrichs had nothing more than a license revocable at pleasure, and it was revoked upon the sale of portions of the lots. The grantees could not be bound by the oral agreement in the absence of definite notice thereof prior to their purchase. The trial court failed to distinguish between an easement and a license. An easement in a right of way over the lands of another is an interest in the real estate burdened thereby, and the effect of the decree complained of is to give to the defendants in error a perpetual easement, and, therefore, a permanent interest in the premises of plaintiffs in error respectively. The agreement was not taken out of the statute of frauds by any recognizable equity. Title to such an easement as that claimed must be acquired by grant and established by proof thereof, or by proof of prescription by which a grant may be inferred; and the grant must, under the statute of frauds, be in writing. (Snowden v. Wilas, 19 Ind. 13; 20 Cyc. 297). It is not contended that one who pays money or suffers damage relying upon an oral contract to convey real estate is not without remedy. But the contract itself is not enforceable and the remedy is only such as arises upon an implied contract to return the

money or pay the damages. (20 Cyc. 216; Cook v. Stearns, 11 Mass. 533; Howes v. Harman, 81 Pac. 48; Crosdale v. Lanigan, 129 N. Y. 604, 29 N. E. 824, 26 Am. St. 551). As to the right to revoke a parol license, see: Bigelow on Estoppel, (5th Ed.) pp. 666, 667; Wood on the Statute of Frauds, Sec. 10; 13 Ency. Law, 550; Piper v. Brown, 43 W. Va. 412, 49 L. R. A. 497; Lawrence v. Springer, 49 N. J. Eq. 289, 31 Am. St. 702; Mill Co. v. Ry. Co., (Minn.) 53 N. W. 641; Water Works Co. v. Ry. Co., (Mont.) 54 Pac. 967. That an easement must be founded upon an instrument in writing or prescription, see: Ins. Co. v. Haskett, 67 Pac. 446; Stewart v. Stevens, (Colo.) 15 Pac. 786; Thoemke v. Fiedler, (Wis.) 64 N. W. 1030; Huber v. Stark, (Wis.) 102 N. W. 12. And although large sums of money may have been expended under a parol license the owner may revoke the license. (St. Louis &c. Co. v. Ferry Co., (Ill.) 54 Am. Rep. 243; Brightman v. Hicks, 108 Mass. 248; Errickson v. Crippen, (N. Y.) 18 N. E. 443; Bohrnstedt v. Scharen, (Ore.) 119 Pac. 337; Lewis v. Patton (Mont.) 113 Pac. 745; United Mer. R. & I. Co. v. American Co., 128 N. Y. Supp. 666; Ewing v. Rhea, (Ore.) 52 L. R. A. 140; Archer v. Ry. Co., (Mont.) 108 Pac. 571; Oil Co. v. Yazoo & Co., (Miss.) 47 So. 468; 25 Cyc. 646). Both deeds of conveyance described the full lots without excepting the alleged right of way, and the grantees had the right to assume that they were getting absolute title to the entire premises. Good faith did not require that they inquire as to the nature of the intended easement. All that was required of them, under the circumstances, was that they be free from fraud, and have an honest belief that, by their deeds, they became the true owners of the premises thereby conveyed. (Blank v. Hudson, 111 U. S. 66; Winters v. Haines, 84 Ill. 585). Inquiry would have developed only that there had been an oral agreement to use the strip of land jointly as a right of way, and there is nothing in the case to show that it was not for the personal benefit of the parties to the contract, or that their relations thereto were not reciprocal or revocable upon the de-

struction or ceasing of the interest of the parties to the con-
tract. The contract had nothing to do with the title to the
land, but it was a personal matter between the parties
thereto.

*Ray E. Lee,* for defendants in error.

All questions as to the sufficiency of the pleadings, the
proper joinder of parties, and causes of action, and objec-
tions to evidence, are abandoned by the failure of plain-
tiffs in error to discuss them in their brief. (Riordan v.
Horton, 16 Wyo. 363). Although the effect of the oral
contract was merely to grant a license, such license was ir-
revocable. (Metcalf v. Hart, 3 Wyo. 343; Gustin v. Hart-
ing, 20 Wyo. 1, 121 Pac. 523). The oral contract was
definite and specific as to the location of the alley and the
amount of land to be embraced in it, and, therefore, it was
not uncertain except possibly as to the period during which
it should remain in force. But there can be no question as
to the duration of the contract, license, or easement, what-
ever it may be called. The alley was created for the pur-
pose of rendering the middle portion of lots one and two as
redivided, accessible and useful. The lots were to be used
for residence purposes, and that use was to be permanent.
Hence the parties to the contract must have intended the
alley to be as permanent as the use and occupancy of the
lots. A suit for injunction is the proper method of test-
ing the right of plaintiffs to keep the alley open. (Powers
v. Heffernan, 16 L. R. A. (N. S.) 523; Croke v. Bank, 70
Pac. 229; Coleman v. Butt, 130 Ala. 266; Jay v. Michael,
92 Md. 198; Wheeler v. Gilsey, 35 How. Pr. (N. Y.) 139;
Manbeck v. Jones, 190 Pa. St. 171; Shields v. Titus, 46
O. St. 544; Newell v. Sass, 142 Ill. 104; Haight v. Little-
field, 24 N. Y. Supp. 1097; Nash v. Ins. Co., 127 Mass. 91;
Downing v. Corcoran, 87 S. W. 114; Smith v. Young, 160
Ill. 163; Flaherty v. Fleming, 3 L. R. A. (N. S.) 461; Cal-
vert v. Weddle, 44 S. W. 648; Driscoll v. Smith, 184 Mass.
221; Lathrop v. Elsner, 93 Mich. 599; McCann v. Day, 57
Ill. 101; Pomeroy's Eq. Juris. Sec. 1341). An easement

in lands may be created by parol agreement for a considera-
tion which has been executed. (Champion v. Munday, 85
Ky. 31; Gilmore v. Armstrong, 48 Neb. 92; Hammond v.
Schiff, 100 N. C. 161; Harrison v. Boring, 44 Tex. 255;
Lee v. McLeod, 12 Nev. 280; Newcombe v. Royce, 44 Neb.
323; Rawson v. Bell, 46 Ga. 19; Rindge v. Baker, 15 Am.
Rep. 475; Robinson v. Thrailkill, 110 Ind. 117; Smith et
al. v. Garbe, 20 Ann. Cas. 1209; Snowden v. Wilas, 19
Ind. 10; Tufts v. Copen, 37 W. Va. 623; Tynon v. Des-
pain, 43 Pac. 1039; Wickersham v. Orr, 9 Ia. 253; Wynn
v. Garland, 19 Ark. 23; Cooper v. Colson, 1 Ann. Cas. 997;
Flickinger v. Shaw, 25 Pac. 268; Roberts v. Templeton, 3
L. R. A. (N. S.) 791; 20 Cyc. 303; 10 Ency Law, (2nd
Ed.) 412; 29 id. 830; Metcalf v. Hart, 3 Wyo. 513; Gus-
tin v. Harting, 121 Pac. 522). A contract between owners
of adjacent parcels of land made for the mutual benefit of
the two estates, where what is done on one estate is in con-
sideration of that done on the other, and it is for the mutual
benefit of the two estates, is enforceable in equity after it
has been executed, except as to making the conveyances.
(Pifer v. Brown, 49 L. R. A. 513; Ewing v. Rhea, 52 L.
R. A. 140). Equity has ample power to mould a decree
that will accomplish substantial justice. (Metcalf v. Hart,
3 Wyo. 533). The evidence clearly establishes the fact that
the alley was used for the purpose for which it was opened
until that use was interfered with by plaintiffs in error.
Both of the plaintiffs in error were notified by the physical
conditions existing at the time of their purchase that the
private alley was in existence and used, and they had notice
by reason of the deed to the plaintiff in error Forde. As
to what is sufficient notice of an easement, see: Brown v.
Kemp, 81 Pac. 236; De Luze v. Bradbury, 25 N. J. Eq. 70;
Ellis v. Bassett, 128 Ind. 118; Kripp v. Curtis, 11 Pac.
879; McCann v. Day, 57 Ill. 101; Pierce v. Cleland, 133
Pa. 189; Robinson v. Thrailkill, *supra;* Randall v. Sil-
verthorn, 4 Pa. 173; Znamanacek v. Jelinek, 69 Neb. 110;

Cook v. R. R. Co., 40 Ia. 451; Hodgson v. Jeffries, 52 Ind.

334; McDougall v. Lane, 64 Pac. 864; Ingals v. Plamondon, 75 Ill. 118.

SCOTT, CHIEF JUSTICE.

This action was commenced in the District Court of Laramie County by James Libby and William E. Hinrichs, as plaintiffs, against L. Harold Forde and Dallas L. Kepler, as defendants, to restrain and perpetually enjoin them from interferring with and obstructing an alleged private way between and along the line between lots two (2) and three (3) of block 258 of the City of Cheyenne, according to the recorded plat thereof. During the trial Stockwell, upon application and showing that he had succeeded to the interest of Hinrichs, was substituted as a party plaintiff. Upon trial the court found and entered its decree in favor of Libby and Stockwell. Forde and Kepler made separate motions for a new trial and severally bring the case here on error.

According to the city plat the north half of block 258 consists of lots 1, 2, 3 and 4, facing to the north on 21st street, lot 1 being the most easterly and bounded on the east by Pebrican Street, while lot 4 is the most westerly and is bounded on the west by Seymour Street. It will be observed that lots 2 and 3 adjoin and are inside lots. Each lot is 66 feet wide and 132 feet long, running from 21st Street south to the city alley, which runs east and west. It is alleged in the petition that in 1905 Fred H. Andre, Nicholas J. Laverents, Mary Laverents and Paul Laverents, who owned lots 1 and 2, and James Libby, who owned lots 3 and 4, as so platted, agreed that if Libby would vacate and set aside the east five feet of lot three (3) the Laverents and Andre each for the portion owned by him or her would set aside and vacate the west five feet of lot two (2) of said block for use as a private alley. Thereafter, Nicholas J. Laverents made valuable improvements on the middle 44 feet of lots 1 and 2, with reference to said alley. Libby also made valuable improvements on lots 3 and 4 with reference to the alley and they and their successors in interest

used it for access to their respective premises, and their right to do so was not molested or interfered with until some time in February, 1912, when Forde and Kepler attempted to close the alley.

It is urged that the agreement made in 1905 was oral and not being evidenced by any writing is void because unenforceable under the statute of frauds. In so far as this contention is concerned we do not think it applicable to the relative rights of Forde and Hinrichs. The former rests his title on a warranty deed dated June 18, 1910, to the north 44 feet of said lots 1 and 2 from Fred H. Andre and wife, in which the property conveyed is further described as "a parallelogram, forty-four feet facing on Pebrican Street and one hundred and thirty-two (132) feet facing on Twenty-first Street." Following the foregoing, in the deed, it is "Provided, however, that the west five (5) feet of lot numbered two is especially reserved as a right-of-way by the grantee for the purpose only of a private alley. Such right-of-way shall in no manner be a cloud on the title to said described premises, but this deed shall vest in the party of the second part all the interest the parties of the first part have to the said lots, pieces or parcels of land."

The right-of-way for a private alley is especially reserved by the grantee from the grant and with such reservation he accepted title by accepting the deed. It is contended that an easement for a right-of-way can not be created *de novo* other than by express grant. A reservation as here provided is equivalent to a grant by the grantee to the grantor and is just as effective as though made by a separate deed. (Shannon v. Twin, 22 Colo. 167, 43 Pac. 1021). The reservation is described as the west five (5) feet of lot two (2) and even if the grantor had theretofore parted with his title to the middle and south forty-four feet of lots one (1) and two (2) the situation of the parcels and the wording of the proviso show the intention, at least, to create an alley extending from twenty-first (21st) street south along the lot line of lots two (2) and three (3) a distance of forty-four (44) feet which would bring it to the northwest corner of

Hinrichs', or Stockwell's, premises. The proviso does not
contain words of inheritance but that was not necessary
under the provisions of our statute. Section 3629, Comp.
Stat. 1910, is as follows: "The term 'heirs,' or other words
of inheritance, shall not be necessary to create or convey an
estate in fee simple, and every ·conveyance of real estate
shall pass all the estate of the grantor therein, unless the
intent to pass a less estate shall expressly appear or be nec-
essarily implied in the terms of the grant." If it is not nec-
essary to use such words in a deed of fee simple it would
follow that it is unnecessary to use such words in a reser-
vation which is equivalent to a conveyance of an easement
and as already stated a reservation of such easement in the
words of the proviso is equivalent to a grant from the
grantee to the grantor. If the views above expressed are
correct, and we think they are, then Hinrichs and Stock-
well, his successor, had an easement for the middle 44 feet
of lot 2, consisting of the west five (5) feet of Forde's
premises for a right-of-way for the alley to give them ac-
cess to the rear of their premises from Twenty-first Street.
Upon the wording of the proviso and the situation of the
premises there can be no doubt that this was the intention
of the parties to Forde's deed. Hinrichs' deed is dated
March 5, 1908, or more than two years prior to Forde's
deed and is from Mary Laverents and Nicholas J. Laver-
ents, her husband, as grantors. The property conveyed by
the deed was the east 127 feet of the middle third of lots
one and two. It will be observed that the length of the
middle forty-four feet from Pebrican Street west to the lot
line between lots two (2) and three (3) is one hundred and
thirty-two (132) feet, yet the description of the property
conveyed to Hinrichs is the east one hundred and twenty-
seven feet of the middle forty-four feet of lots one and two.
Hinrichs, or Stockwell, introduced in evidence another deed,
dated November 10, 1911, a later date than Forde's deed,
from his original grantors for the same premises in which
the length of his parcel of land is given as one hundred and
thirty-two feet and extending west to the lot line between

lots two and three, subject to an easement in the following language: "Subject always to a perpetual right-of-way of the owners for the time being, and their heirs and assigns, of the north one-third of said lots one and two and of the south one-third of said lots one and two, and of any and all persons going to or from any part of said last mentioned parcels or pieces of land, in common with said party of the second part, his heirs and assigns, for any and all purposes, with or without vehicles and animals, over and along a private alley eight feet wide and forty-four feet long, covering the west eight feet of that portion of lot two herein conveyed." It is further recited in this deed that it was given for the sole, only and express purpose of correcting the error in the former deed in its failure "to express the intention, understanding and agreement of said parties with reference to the private alley therein reserved, said intention, understanding and agreement being as hereinbefore set out and expressed." It thus appears that the grantors in Forde's deed, as well as the grantors in Hinrichs' deed, carried the parol agreement of 1905 into their respective deeds and further that Hinrichs took title to his tract subject to an easement for the alley in favor of the tract which Forde subsequently purchased. The right to the private way from Twenty-first Street south. a distance of 88 feet. to the southwest corner of Hinrichs' land therefore rests not in parol but by deed. The easement was established in so far as Hinrichs' and Stockwell's premises are concerned not by parol evidence of a revocable license but by deed and that being so we are of the opinion that they were entitled to the decree enjoining Forde from attempting to close the alley.

The claim of Hinrichs and Stockwell as against Kepler to an easement over the west five feet of the south forty-four feet of lot one (1) to give them access to the rear of their premises from the city alley is not based upon any reservation in the deed through which Kepler claims title. His deed is a warranty deed from Van Dolah and wife, the then owners, dated April 5, 1911, and conveyed the south

44 feet of lots one (1) and two (2) of block 258 by metes and bounds, designating it as a parallelogram. It does not appear from whom or when Mrs. Van Dolah obtained title, although it must have been subsequent to the verbal agreement made by the owners in 1905. Defendants contend that at most this oral agreement with reference to establishing the private way was a revocable license. We deem it unnecessary in the view we take of this case to enter into a lengthy discussion as to the difference between a parol license which may be revoked at will and an easement other than to say that it has been held by this court in Gustin v. Harting, 20 Wyo. 1, 121 Pac. 522, 33 Ann. Cas. 1914C, 911, that a parol license may ripen into an easement when the licensee has expended money and the license has become executed. (Dark v. Johnston, 55 Pa. St. (5 P. F. Smith) 164, 93 Am. Dec. 732).

Both Forde and Kepler allege that they took their respective deeds without notice of any claim to the ground for alley purposes. These allegations were denied and the evidence, aside from Forde's deed and the record thereof, is conflicting. Andre, the grantor in Forde's deed and who was a party to the oral agreement with Libby to create the alley, was sworn, and being inquired of among other things testified that after the oral agreement with reference to the alley he built a part of the fence with reference to it leaving a strip of land off the west side of lot two for the alley agreed upon and that the fences were built five feet east of the lot line; and that in addition thereto he built a house on the north one-third of lots one and two, a house on the middle one-third, and also a house and coal house on the south one-third of said lots. He further testified as follows: Question: "When you sold this property (meaning to Forde) was anything said about a private alley? Answer. We went out there—Mr. Newman, the real estate man, had the sale of it—and showed him (Forde) where the line was, and as we went through the house I told him all about it. I told him that was a private alley back there and it must be open for the use of these parties adjoining." Mrs. Van

Dolah, one of Kepler's grantors, was sworn and testified as a witness that at the time she and her husband sold the south one-third of the two lots to Kepler that she was asked by the scrivener in the presence and hearing of Kepler if there was an easement back of the lots and she told him there was a private alley there. She further testified that the alley was open and being used at the time Kepler purchased it from her and her husband. Hinrichs testified that he had owned the middle one-third of lots one and two since 1908 and that he was given to understand when he purchased it that there was a private alley and at that time the fence stood five feet east of the lot line and that he continued to use the alley. Libby testified that he was and had been the owner of lots three and four for twenty-three years; that at the time of the verbal agreement with reference to the alley there were no improvements on said lots 1, 2, 3 and 4, and that shortly after the owners of lots one and two started to erect improvements thereon, building coal houses on the middle and south third and a fence so as to leave the west five feet of lot two vacant for use as a private alley, in which condition those lots have remained ever since; that he had built three houses on lots three and four facing Seymour Street, and to the rear of those houses is a private driveway, entering from Twenty-first Street, and for the use of these three houses all on his own ground and further east at a distance of 80 feet is a retaining wall and between this retaining wall and the private alley in dispute he has constructed his residence, leaving five feet and nine inches off the east side of lot three (the nine inches being for clearance) for the private alley in dispute and that there is a lawn sixteen feet west of his present residence; that he commenced to build his residence in the fall of 1908, and that he moved into it on March 27, 1910; that his furnace is in the north end of the house which faces on 21st street, and the coal chute is about 12 feet from the north lot line of lot three and that teams in unloading coal are on the private alley; that since building his residence Twenty-first Street has been placed on an established grade by the

city, leaving all the lots along Twenty-first Street about two
and one-half feet above the grade of the sidewalk; that he had
built a retaining wall along the sidewalk on the north side,
leaving it about one foot short to the west line of the private
alley, giving him about six feet west of the lot line, or mid-
dle of the alley, so that when teams entered with coal they
entered to the west of the lot line where he had cut down
the bank so the teams could drive up and when they got up
they would be on the alley and when he started to cut down
the embankment at the entrance to the north end, Forde and
Kepler objected and obstructed the alley.

This evidence tended to prove actual notice to Forde and
Kepler from their respective grantors at the time they were
negotiating the purchase of their premises of the right of
Libby and Hinrichs to use the alley which had theretofore,
in pursuance of the oral agreement, been set aside and used
for that purpose. The physical conditions were apparent
and they were each informed with reference to the same.
Such notice, regardless of what was contained in the deeds,
was notice of the title of their grantors and the extent of
such title intended to be conveyed by the deeds. The orig-
inal owners, who were parties to the oral agreement, had
become interested in maintaining said alley because their
improvements had been constructed with reference to it
and its use in connection with their improvements. This
right had accrued to Hinrichs and Libby and neither were
parties to Forde's or Kepler's deed. It is urged that be-
cause the deed to Kepler contained no reservation or excep-
tion from the grant of the ground for alley purposes that
that revoked the license. As already stated, we do not think
it can, on the facts here, be construed as a revokable license.
We are not concerned as to the rights between his grantors
under their deed for its terms could not be extended to de-
prive strangers thereto of their rights. The easement was
established by estoppel by the acts and conduct of the orig-
inal parties and as between them and upon the facts they
and their grantors were each estopped from denying such
easement. It was as completely established as between them

and their privies and subjects their parcels of land to the servitude as completely as though it were created by a deed for that purpose. The grantees took title with notice of the easement in favor of third persons and as against them acquired only what their grantors could honestly transfer, and are liable to the same extent as their respective grantors. (3rd par. §688, Vol. 2, Pomeroy's Eq. Jur. (3rd Ed.)

As already stated it is contended that the verbal agreement to establish the alley between the adjoining lot owners was void under the statute of frauds. This was not a bare oral agreement but it was an oral agreement relied and acted upon in good faith by the parties (Rhea v. Forsythe, 37 Pa. St. (1 Wright) 303, 78 Am. Dec. 441.), who improved their premises with reference to and the right to use the proposed private alley in connection with their premises. This we think takes it out of the statute and places it squarely within the domain of equity, and courts of equity have declared that one or his privies ought to be estopped and denied the right to repudiate his acts when they have been relied and acted on and when to do so would operate as a fraud or work an injustice. (16 Cyc. 724, 725.) It is said at §807 in Vol. 2 of Pomeroy's Equity Jurisprudence (3rd Ed.) that the owner of land by his acts in *pais* may preclude himself from asserting his legal title and further, "The most important 'ground of justice and equity' admitted by courts of equity to uplift and displace the statute of frauds concerning legal title to land, by fastening a liability upon the wrong doer is fraud. There are many instances in which equity thus compels the owner of land to forego the benefits of his legal title and to admit the equitable claims of another, in direct contravention of the literal requirements of the statute, but they all depend upon the same principle." Many and varied applications of this important rule of equity are pointed out by the learned author. One's conduct, acts or language written or spoken to induce another to act and who has so acted at great expense is sufficient to preclude him from repudiating his consent to such acts. The lots as re-arranged were known and

intended by the parties to be used for residence purposes without limit as to time and it will be presumed that the parties intended the alley to be of as permanent a character as the use and occupancy of the lots.

It is contended that injunction is not the proper proceeding to try the title to the alley. Both Forde and Kepler denied the existence of the easement or the right to use the private way. That question was first introduced into the case by them and made an issue of fact as well as of law in the case. If Libby had a right to use the alley then a court of equity would protect him in that right and he was entitled to prove anything essential to maintain such right. This is not an action at law to determine the legal title but an action to preserve a right and as such is cognizable by a court possessing equitable powers.

The judgment will be affirmed.            *Affirmed.*

POTTER, J., and BEARD, J., concur.