This is an action for equitable relief. The complaint, in substance, alleges:
That the plaintiff and defendants are the owners of contiguous lots on the west side of Main Street in the city of Hendersonville, the plaintiff's lot being No. 8 and the defendants' lot being No. 7 of what is known as the Bell and Gregory subdivision. That each lot has a frontage of 20 feet on Main Street and a depth of 103 feet, each bordering on an alley on the rear and that the plaintiff's lot lies south of the defendants' lot. That in the year 1924, the plaintiff and one B. L. Foster entered into a parol agreement to construct an Arcade Building on the entire area of both lots to be two stories in height, 40 feet in width, 103 feet in length and to have an eight-foot hallway in the center of the first and second floors, the center of the hallway to run with the boundary line between the two properties. That the structure and arrangement of the rooms, shops, etc., on both sides of the hallways were to be identical in size, form, and arrangement and the first floor was to consist of stores, rooms, and shops facing on Main Street or the arcade or hallway; and on the second floor all rooms were to be used either as offices or apartments and were to open into the upstairs hallway. That it was further agreed that the entire width of the hallways of both floors was to be for the use and benefit of both sides of said building and that each of the parties was to have the right to the full use, enjoyment and benefit of that part of each hallway lying on the land of the other.
The complaint further alleges that the plaintiff and the said Foster constructed a building in substantial compliance with said agreement at a cost of more than $50,000 and that the hallways were constructed as agreed upon, and that the front and rear doors of the lower hallway *Page 482 
were common doors and were locked and unlocked by common keys, and that the upstairs hallway extended from a common window in the front to a common window in the rear. That the plaintiff and the said Foster, by reason of their mutual promises, made the outlay above mentioned and that said agreement was to the mutual advantage of both in the construction and use of said building.
It is further alleged that the legal effect of said parol agreement was to create in equity reciprocal easements by estoppel in favor of each party against the half of each hallway on the land of the other and that said estoppel would operate so long as the building remained on the property.
It is also alleged that the structure of the building and of the hallways, stores, shops, offices, and apartments were sufficiently open and visible to indicate the existence of reciprocal easements on both halves of said hallways and to put prospective purchasers on notice of the benefits and burdens arising from the joint use of the property.
It is further alleged that the defendants became the owners of the Foster lot in May, 1935, by deed from Hendersonville Building Loan Association, and that said defendants by said deed acquired all the right, title and interest of the said B. L. Foster in said lot, and that by accepting said deed became entitled to the alleged mutual rights and obligated to perform the alleged mutual burdens in the hallways as set forth above.
It is further alleged that in the month of December, 1941, the defendants erected solid walls about one inch thick and about 7 feet high extending the length of said hallways, just on their side of the division line; that the one on the first floor extends approximately from the center of the common doorway at the front of the building to the common doorway at the rear and that the one on the second floor extends from the approximate center of the common hall window in the front to the approximate center of the common hall window in the rear.
It is further alleged that the erection of said walls by the defendants was unlawful and wrongful, in that it deprives the plaintiff of the full use of the hallways and interferes with the light and ventilation; that they also create an unsightly appearance because of the alleged manner in which they were constructed, and that the plaintiff is being irreparably damaged by reason thereof.
The plaintiff further alleges that the alleged estoppel created, as he contends, between him and the said Foster is binding upon the defendants and that the construction of said walls was and is a continuing trespass upon his rights and that he is entitled to a mandatory injunction to compel their removal. *Page 483 
A demurrer interposed in the court below was overruled. Defendants appeal, assigning error.
The demurrer admits the material facts alleged in the complaint. Hence, it becomes necessary for us to determine whether or not the construction of the building as described in the complaint, pursuant to a parol agreement created reciprocal or cross easements as to each owner, in the hallways of the building. If so, are the defendants, the present owners of the Foster property, bound by said easements?
In the case of Reid v. King, 158 N.C. 85, 73 S.E. 168, the plaintiff had constructed a party wall pursuant to a parol agreement with one Thompson, the owner of an adjoining lot. It was agreed that Thompson should have the right to use the party wall if and when he should construct a building adjacent thereto, at which time he should reimburse Reid for one-half the cost of the wall. It was further agreed that if Thompson should sell the lot without constructing a building thereon, he would inform his grantee of the party wall agreement. Thompson sold his lot to one King and informed him of the terms of his agreement with plaintiff. King erected a building on the lot and used the party wall, but refused to reimburse Reid for one-half of the cost thereof. An action was instituted for the recovery of one-half of the cost of the wall, and the Court held the defendant obligated to pay his pro rata part of the cost — not by reason of the agreement, but from the nature of the relation, or quasi excontractu; and the Court said: "The effect of such an agreement is to create cross easements as to each owner, which binds all persons succeeding to the estates to which the easements are appurtenant, and a purchaser of the estate of the owner so contracting would take it burdened with the liability to pay one-half the cost of the wall, whenever he availed himself of its benefits. 88 Mo., supra (p. 498). The language of courts and of judges has been very uniform and very decided upon this subject, and all agree that whoever purchases lands upon which the owner has imposed an easement of any kind, or created a charge which could be enforced in equity against him, takes the title subject to all easements, equities, and charges, however created, of which he has notice. 88 Mo., supra. LordCottenham said, in Tulk v. Moxhay, 2 Phil. (Eng. Ch.), 774: `If an equity is attached to property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased.' But although the covenant, when regarded as a contract, is binding only *Page 484 
between the original parties, yet in order to give effect to their intention it may be construed by equity as creating an incorporeal hereditament (in the form of an easement) out of the unconveyed estate, and rendering it appurtenant to the estate conveyed; and when this is the case, subsequent assignees will have the rights and be subject to the obligations which the title or liability to such easements creates. A purchaser of land, with notice of a right or interest in it existing only by agreement with his vendor, is bound to do that which his grantor had agreed to perform, because it would be unconscientious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to the estate of which he had notice when he became the purchaser. 88 Mo., supra;Spencer's case, 1 Smith L. C. (6 Ed.), p. 167. See also Spaulding v.Grundy, 126 Ky. 510, and cases cited; Richardson v. Tobey, 121 Mass. 457; 30 Cyc., 788 and 795. . . . The statute of frauds does not apply. The equity arises regardless of any promise except, perhaps, that which is fairly implied by law. 20 Cyc., 282; Pitt v. Moore, 99 N.C. 85; Ray v.Honeycutt, 119 N.C. 510; Tucker v. Markland, 101 N.C. 422."
In the instant case, the original parties agreed, for all practical purposes, to substitute common hallways on both floors of the building in lieu of a party wall and constructed the building accordingly. For approximately seventeen years the entrances, stairway and hallways were used as contemplated by the original builders and so used for six years by these defendants.
The greater weight of the authorities seem to hold that no easement orquasi- easement will be created by implication, unless the easement be one of strict necessity, but we think that means only that the easement should be reasonably necessary to the just enjoyment of the properties affected thereby, and it is so stated in Thompson on Real Property, Vol. 1, sec. 409 (369), p. 668, citing many cases, among them Bowling v. Burton,101 N.C. 176, 7 S.E. 701. This is in accord with the decision of this Court in the case of Ferrell v. Trust Co., 221 N.C. 432, 20 S.E.2d 329, in which we held: "It is a general rule of law that where one conveys a part of his estate, he impliedly grants all those apparent or visible easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed, and which are reasonably necessary for the use of that part," citing numerous authorities.
The fact that the title to the Foster property, now owned by the defendants, and the title to the property of the plaintiff, were not vested in a common owner at the time of the construction of the building involved herein, is immaterial. Easements created by implication or *Page 485 
estoppel do not necessarily stem from a common ownership. But where adjoining properties of separate owners have been developed in relation to each other, so as to create cross easements in the stairways, hallways, or other private ways, serving both properties, such easements, if open, apparent and visible, pass as an appurtenant to the respective properties, and are binding on grantees, although not referred to in the conveyance. This view is in accord with many authorities from other jurisdictions.
In 19 C. J., sec. 137, p. 934, it is said: "If a building consisting of several apartments is so constructed that all the occupants must enter and depart by the same hall and stairway these become a way of necessity upon the sale or lease of part of the building." Also sec. 145, p. 939, where it is stated: "One who purchases land with notice, actual or constructive, that it is burdened with an existing easement takes the estate subject to the easement, and will be restrained from doing any acts which will interfere with the benefit and enjoyment of the easement to the full extent to which the party having a right thereto, who has not parted with or impaired the same, was entitled at the time when such purchaser bought. He has no greater right than his grantor to prevent or obstruct the use of the easement. The rule applies whether the sale is voluntary or involuntary. Frequent applications of the rule are found in the case of private rights of way, stairways, and water rights." Welfare B. L. Asso. v. Kreiger,226 Wis. 105, 275 N.W. 891.
In the Appeal of Clelland, et al., 133 Pa., 189, 19 A. 352, the facts and holding of the Court are succinctly stated in the syllabus, as follows: "The owners of adjoining lots built a single building covering both lots. The only access to the upper stories was by stairs which were altogether on one lot. Held, that the erection of such building constituted an executed license, in the nature of an easement, on the part of the owner of said lot, allowing the owner of the other lot to use such stairs." It is stated in the opinion of the Court that "The building being cast by common consent in its present permanent form, neither party can revoke the arrangement, upon the faith of which the money of the other has been expended. Each and every part is affected with what, in its nature, is a permanent servitude, so long as the building itself stands. It cannot be changed from its present form, nor the right of common access now provided for, be interfered with, at the will of either party, but only by the common consent of all." A similar conclusion is reached by the Court in the case of Binder v. Weinberg, 94 Miss. 817, 48 So. 1013. The factual situation was similar to the instant case, and while the Court held the evidence insufficient to create an "easement of strict necessity," it did hold: "That the appellee is estopped, by equitable considerations, from obstructing this common hallway with this new *Page 486 
room. It is plain that the original verbal agreement between the parties who built the party wall, and the common hallway above and on the party wall, expressly stipulated that each of the parties was to have the use of the entire hallway, that the light and ventilation of that hallway were not to be interfered with by either, and that the plan of the two buildings, as related to the party wall, and also the common hallway, the way in which both were constructed, and the use to which the common hallway was to be put by both, involved a unity of design; that design being that each party should have full use of the whole common hallway, and derive the full benefit of unobstructed light and air and passageway therein. This is clear from the evidence. The evidence of the appellee himself plainly shows that he had occupied an office in this building for five years as a tenant, from its original construction, and that prior to his purchase he was thoroughly conversant with the plans of this building, and that he knew, when he purchased the building, that the wall was a party wall, that the stairway leading up to the hallway was a party stairway, that the stairway in the rear was also a party stairway, and that the hallway, at the time he purchased it, was and had been used all the while and owned as a party hallway, ever since the building was erected. . . . It is further evident, from the verbal agreement, that the appellant had put his money into the construction of this common hallway, as well as of the party wall, upon the faith of that verbal agreement that he should have the use of the whole of the common hall, just as his cobuilder should have the use of the whole common hallway, and that it was the purpose of this verbal agreement that this common hallway should be left entirely unobstructed to be used, according to the agreement, only as a common hallway. It was the plain purpose and plan, as shown by the construction and building of the party wall and common hallway, that the common hallway should be so used by both in its full extent, and should not be obstructed in any part of it."
It is also stated in 26 C. J. S., sec. 43, p. 707: "If a building is so constructed that all the occupants must enter and depart by the same hall and stairway, an easement for the use of the hall or stairway is impliedly granted on the sale or lease of part of the building." To the same effect is the holding in the case of Forde v. Libby, 22 Wyo. 464, 143 P. 1190, where it is stated: "Where owners of adjoining lots orally agreed upon a private way between their lots and constructed their improvements with relation thereto, each was estopped from disputing the other's right to such way, and that estoppel extended to their grantees, *Page 487 
who took with notice of the way, although it was not expressly reserved."Wright v. Barlow, 169 Okla. 472, 37 P.2d 958.
We think the demurrer was properly overruled.
Affirmed.