George F. BAUER, Jr., and Marian Bauer, husband and wife, Plaintiffs in Error,

v.

Claude Hardin CRAIG, Ethel L. Craig, and Claude H. Craig, Jr., Defendants in Error.

No. 37077.

Supreme Court of Oklahoma.

March 20, 1956.

Rehearing Denied May 15, 1956.

Milton W. Hardy, of Hardy & Hardy, Tulsa, for plaintiffs in error.

Covington & Donovan, and Gable, Gotwals & Hays, Tulsa, for defendants in error.

BLACKBIRD, Justice.

Plaintiffs in error own the Ritz Apartment building, which fronts on 15th Street, at said street's intersection with Birmingham Street, in Tulsa, Oklahoma, together with Lot 13 on which it stands, and Lot 14 adjoining said property on the east, all in Block 7 of the City View Hill Addition to said City. Defendants in error own, and/or have a homestead interest in, the

Birmingham Apartment building, which also fronts on 15th Street, but stands on Lot 15, a so-called "inside" lot directly across, and adjoining, Lot 14 east of said Ritz building. There are garages behind each of these apartment buildings for use by their respective tenants. The only means provided for automobiles to enter or leave these garages is via a hard-surfaced driveway which extends from Birmingham Street across the rear of all three of the lots (13, 14 and 15), behind the two apartment buildings, and in front of their respective garages. The right of way for this driveway was provided for in a written easement agreement, termed "Right Of Way Grant" which one, E. M. Brown, who (for the purposes of this controversy) may be treated as the original owner of the Birmingham property, entered into with one Ray H. Welden, on September 26, 1930, when he sold Welden said property. Among the provisions of said instrument, which referred to, Brown as "grantor" and Welden as "grantee", was one comprising the 9th paragraph thereof, in which Brown purported to agree, on behalf of himself, his heirs, personal representatives and assigns, that so long as the building then situated on Lot 15 was used as an apartment house "he" would not erect any structures "of any kind or nature" on the front 85.15 feet of the vacant Lot 14 "without the written consent of the said grantee, or the then owners" of Lot 15.

When plaintiffs in error commenced uprooting trees on Lot 14 for the announced purpose of building a swimming pool thereon, defendants in error instituted the present action to enjoin them as defendants from starting such construction. The trial court granted them the injunction on the basis of the above-quoted provision of the Brown-Welden "Right Of Way Grant"; and defendants' present appeal from said injunctive judgment challenges the efficacy of said easement agreement. Our continued reference to the parties will be by their trial court designations.

Previous to making said agreement, Brown had, in January, 1929, entered into a written contract to purchase Lots 13 and 14 (both then vacant) from the then owners, a Mr. Gordon and the joint executors of the Guy M. Davis estate, and had made a down payment on their purchase price and had taken possession of them under said contract, but by its express terms, title to the lots remained in the sellers until Brown completed paying for the lots, at which time he would receive the deed the sellers executed and placed in escrow for him.

In the Brown-Welden "Right Of Way Grant", it was specifically recognized that Brown was merely *purchasing* the lots and in the 5th paragraph thereof, it was "covenanted on behalf of the grantor * * * (Brown)" that *"upon receiving a deed"* to them "this right of way grant may be filed for record and it is understood that it shall attach to said property." After provision in the 6th paragraph thereof for the right of way to be used by "the grantee" (Welden) and his assigns for ingress and egress from and to the Birmingham Apartments' garages, the 7th paragraph thereof provided that it was to be used "in common" by the grantor, his heirs, assigns, tenants, etc., and the grantee, his heirs, etc. The 8th paragraph further gave the grantee, his heirs and assigns, the right and privilege to erect in the northeast 50 feet of Lot 14 a garage or garages for occupants and tenants of the Birmingham Apartment building. In its 10th paragraph, the agreement provided that "the grantee" was to pay one-half the "up-keep" of said Lot 14, and its 12th paragraph contained provisions with reference to the owners of the respective properties participating equally in the payment of the taxes on said lot.

In 1931, before Brown had completed paying for the lots, or had received the deed thereto from the escrow holder, a Tulsa bank, he commenced construction on Lot 13 of the aforesaid Ritz Apartments. Before completion of said construction, he apparently exhausted his funds and became bankrupt, with many bills and lien claims outstanding against said new apartment building and E. M. Brown purported to convey it by quit claim deed to one R. L. Brown. Lien foreclosure proceedings then followed and a Mr. Ingraham was appoint-

ed therein as receiver for the property. Said receiver finally finished paying for the lots, under E. M. Brown's contract to purchase them, and thereupon received his deed from the escrow holder. At the foreclosure sale had in said proceedings, United Brick & Tile Company purchased the Ritz Apartment property, including Lot 14. Several years thereafter, through various mesne conveyances unnecessary to describe, a Mr. and Mrs. Brookman became the owners of said property, and, by deed dated July 27, 1954, conveyed it to plaintiffs in error, who have since remained its owners. In the meantime, through various mesne conveyances and court proceedings unnecessary to describe, a Mr. and Mrs. Meadows became the owners of the Birmingham Apartment property, and, by deed executed and delivered April 23, 1947, conveyed it to defendants in error. In both of said deeds, by which the litigants herein took title to said respective apartment properties, reference was made to an existing easement over Lots 13 and 14. The Brookman deed to plaintiffs in error merely contained a generally worded exception in its warranty clause to "Easements Of Record"; but the Meadows' deed to defendants in error made specific reference to the original easement grant as follows: "Grantors also set forth that they are the owners of all rights acquired by the grantee in the Right Of Way Agreement dated September 26, 1930, and recorded in Book 940, Page 50 of the Records of the County Clerk of Tulsa County, Oklahoma, which rights are now in good standing and which rights are hereby set over, transferred, and sold to the grantee herein." After going into possession of the Ritz Apartment property, plaintiffs in error began to modernize and improve it, and, in the course thereof, apparently conceived their idea of building a swimming pool on the aforesaid "restricted" front 85.15 feet of Lot 14. Accordingly, they, through their attorney, wrote plaintiffs a letter in which they referred to the hereinbefore described right of way agreement and proposed that the construction of said swimming pool be undertaken on a share-the-expense basis for the joint use of the tenants in both apartment buildings. Plaintiffs rejected this proposal, and it was then that defendants proceeded to undertake it by themselves; and were thereafter prevented from doing so as aforesaid, by the injunctive judgment they herein appeal from.

■ In the arguments defendants advance for reversal under their Propositions Of Law, Nos. 1 to 6, inclusive, they attempt to show that the Brown-Welden "Right Of Way Grant" could not have been valid or effective, either to create an easement and covenants running with the title to the Ritz Apartment property, or as an easement agreement purely personal to Brown and Welden; and, that if it was binding upon Brown and Welden, it was never accepted by subsequent owners of the respective properties and therefore could not bind them. In the first part of said argument, and more particularly under their Proposition No. 1, they say that Brown never obtained the type of ownership necessary, under 60 O.S.1951 § 52, under the provisions of said "Right Of Way Grant" itself, and under the provisions of Brown's contract for the purchase of Lots 13 and 14, to render said purported agreement effective to burden Lot 14, as the servient tenement, with such purported servitude. We find it unnecessary to further describe or discuss defendants' arguments, for, as we view the case they are estopped from challenging the efficacy of the Brown-Welden easement agreement. From the statements of counsel at the trial, it appears to be undisputed that the driveway, shown by exhibits, to be hard surfaced and of a permanent type of construction, was constructed pursuant to said agreement, to be used in common by tenants of both apartment buildings in accord with the 7th paragraph of said agreement. It further appears that both apartment buildings were constructed to so completely occupy the particular lots upon which they stand, that there was no space left for automobiles' ingress and egress to their garages from 15th Street, or in any other manner. Thus the driveway was a way of necessity; and, to paraphrase a statement from Keller v. Fitzpatrick, 204 Okl. 192, 228 P.2d 367, 370, its servitude, being obvious, precluded (independent of

the exception in their deed) the idea that defendants could have purchased the Ritz property free from the burdens thereof. We see no reason, on principle, why the rule quoted from Forde v. Libby, 22 Wyo. 464, 143 P. 1190, in Wright v. Barlow, 169 Okl. 472, 37 P.2d 958, 960, should not apply to the present case. In the latter case, the buildings involved, like the apartments, garages and driveway here involved, were constructed in relation to an easement agreement. Many years later a subsequent owner of one of the respective properties sought and obtained an injunction to prevent the adjoining owners from encroaching upon, and closing, an alley which, at all times subsequent to said agreement, had been used by the owners of the respective properties and the public in general. Under the rule therein quoted from the cited Wyoming case, each owner was estopped from disputing the right to such way, where the improvements were constructed " 'with relation thereto' "; and, " 'that estoppel extended to their grantees, who took with notice of the way,' " regardless of the fact that no reservation or exception of said way was contained in the deeds by which they acquired title to their property. Here the defendants, while continuing to reap the benefits of the Brown-Welden "Right Of Way Grant", including the use by their tenants of the common driveway constructed thereunder, now seek to relieve themselves of its burdens, although their attorney's hereinbefore mentioned letter to plaintiffs shows that they recognized said agreement, and, the necessity thereunder, of their obtaining plaintiffs' consent to the swimming pool's construction, until a short time before plaintiffs filed the present action. And, the record indicates that in the trial of the case; they made no serious effort to challenge the validity of the Brown-Welden agreement for right of way purposes. They cannot, however, regard said agreement valid for driveway purposes, and, at the same time, assert its invalidity for other purposes, without demonstrating that the assertedly invalid portion of said agreement, is severable from the portion that they not only did not challenge, but, as far as the record shows, wish continued in

force and effect. The inherent weakness in their argument on appeal is that much of it apparently assumes, or takes for granted, that the Brown-Welden contract or agreement is severable, without demonstrating that it is. We therefore conclude that it presents no valid reason for reversing the trial court's judgment.

In and under their Proposition Of Law No. 8, defendants contend that the trial court erred in entering its judgment in favor of Claude Craig, Sr., (as it did in favor of the other plaintiffs) after the evidence revealed that he had, prior to the action, deeded his interest in the property to his wife, Ethel L. Craig. Counsel says the action should have been dismissed as to that Mr. Craig. This argument constitutes no ground for reversing the judgment. It is not denied that Claude Craig, Sr., had a homestead interest in the Birmingham Apartment property; and, after this appeared during the trial, defendants never, before judgment, moved that he be dismissed as a plaintiff in the action. The question of whether he should have been dismissed is therefore not before us. See In re Cully's Estate, Okl., 276 P.2d 250, 255.

■ Lastly, defendants contend, under their Proposition Of Law No. 7, that the trial court entered the judgment appealed from, prematurely. The record reveals that, at the time the judgment was entered, the trial court had reserved decision upon, and taken under advisement, a motion filed by defendants, for judgment on the pleadings. It is obvious from the record that counsel for both plaintiffs and defendants agreed to, or at least acquiesced in, submission of the cause to the court for its decision and/or judgment as to whether or not the Brown-Welden "Right Of Way Grant" was to be enforced. Their recognition that if this question was determined in the affirmative, plaintiffs would be entitled to the injunction, without further proceedings, appears unmistakable from several colloquies between them and the trial judge during the course of the trial. In these circumstances, the trial court's judgment cannot be said to have been entered prematurely and we hold that it was not. See City of Wewoka v. Dunn, 201

Okl. 286, 205 P.2d 291; Whipps v. Kling Bros. & Co., 182 Okl. 382, 78 P.2d 291.

As we have found none of the arguments urged for that purpose, sufficient cause for reversing the trial court's judgment, the same is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, JACKSON and HUNT, JJ., concur.